JOHN E. DEVELIN, Appellant, *v.* ABRAHAM B. COLEMAN, Respondent.

The firm of C. & S. were liable as principals upon certain drafts held by M. C. Defendant was liable thereon as surety. M. C. brought suit upon the draft against all the parties thereto. S., who had assumed the liability of the firm of C. & S., entered into a contract with defendant by which defendant was to provide for and take up the drafts in the first instance, but S. was eventually to pay them and save defendant harmless therefrom. Before the making of this agreement plaintiff had promised to indorse the notes of S. for the purpose of settling the suit. He was fully apprised of the agreement. Defendant paid the drafts and settled the suit. Plaintiff in ignorance of that fact indorsed the notes of S., payable to the order of M. C., and delivered them to defendant for the purpose of taking up the drafts. Defendant procured the indorsement of M. C. thereto and transferred them to a *bona fide* purchaser. In an action for the conversion of the notes,—*Held*, that as the purpose for which plaintiff indorsed and delivered the notes to defendant was not accomplished by them, the latter acquired no title to them; that he had no right to use them as security for what he had before paid for S., and was therefore liable.

(Argued December 13, 1872; decided December 17, 1872.)

APPEAL from judgment of the General Term of the Court of Common Pleas for the ·city ·and county of New York, affirming a judgment in favor of ·defendant,·entered ·upon ·the report of a referee.

This ·action was brought to recover damages for the alleged conversion of certain promissory notes, indorsed by plaintiff and delivered by him to defendant.

Charles A. Stetson and Robert B. Coleman were formerly proprietors ·of the Astor House, in New York, under the firm ·name of ·Coleman & ·Stetson.   They failed in May, 1856. There was then outstanding four drafts drawn by defendant upon and accepted by ·Coleman & ·Stetson, which ·were held by Moses Chamberlain, Jr.   The drafts were drawn for the accommodation of Coleman & Stetson.

In August, 1856, Chamberlain brought suit upon the drafts against drawer and acceptors.

In October, 1856, defendant proposed to Chamberlain that he should take the notes of Stetson indorsed by plaintiff in settlement of the suit and payment of the drafts.   To this, Chamberlain assented.   Defendant advised plaintiff that Chamberlain so agreed.   Plaintiff agreed to procure Stetson's notes and to indorse them for the purposes named.

On the ·27th March, 1857, an ·agreement was entered into between Stetson, who ·had ·assumed ·the liabilities ·of the ·firm, and the defendant, the ·substance of ·which, as far as relates to ·the matter in controversy, is ·set forth in ·the opinion.

Plaintiff was the son-in-law and the ·attorney and legal adviser of Stetson, and aided in ·perfecting the arrangement resulting in said ·agreement, ·and was ·cognizant of ·its contents.

In April, 1857, plaintiff procured ·Stetson's notes, payable to the order of ·Chamberlain, indorsed them ·and delivered them to defendant, for ·the purpose ·of paying the drafts and settling the suit ·; but ·before this defendant had settled the suit ·and paid the drafts ·by the transfer of certain ·real estate and by his firm note, Chamberlain declining to accept the notes proposed.   Of this fact plaintiff was ignorant when he delivered the notes to defendant.   Defendant procured the ·indorse-

ment of Chamberlain to the notes and transferred them for value before maturity. Other facts appear in the opinion.

The referee found as conclusions of law that defendant did not convert the notes, but applied them substantially to the uses and purposes intended, and that plaintiff had sustained no damage or loss from his acts. He thereupon directed judgment for defendant, which was entered accordingly.

*Henry H. Anderson* for the appellant. Defendant's appropriation of the notes was an abuse of the lawful possession, and amounts to a conversion. (Story on Agency, §§ 214, 217, *c; Conkey* v. *Bond*, 34 Barb., 276; id., 36 N. Y., 427; *Evans* v. *Kymer*, 1 Barn. & Adolph., 528; *Wolfe* v. *Brouwer*, 5 Robt., 601; *Murray* v. *Burling*, 10 John., 172; *Decker* v. *Matthews*, 2 Kern., 313.) Plaintiff is now entitled to recover the amount paid by him. (*Decker* v. *Matthews*, 2 Kern., 313.)

*Francis C. Barlow* for the respondent. There was no diversion or conversion of the notes. (*Rochester* v. *Taylor*, 23 Barb., 18; *Mohawk Bank* v. *Carey*, 1 Hill, 513, and opinion of BRONSON, J.; *Bank of Rutland* v. *Buck*, 5 Wend., 66; *Purchase* v. *Mattison*, 2 Robt., 71; *Grandin* v. *Leay*, 2 Paige, 509; *Moore* v. *McKibbin*, 33 Barb., 246.) The facts found will not justify an action on the case for a deceit. (*Geddes* v. *Pennington*, 5 Dow, 159; *Green* v. *Gordon*, 4 Scott New R., 13; 1 Story Eq. Juris., § 198, note; Parsons on Contracts, 4th ed., 267, 268.)

GROVER, J. The plaintiff insists that the referee erred in his legal conclusion that upon the facts found he was not entitled to recover. That from these facts it appears that the defendant converted the notes to his own use by tranferring them to a *bona fide* purchaser, thereby making the plaintiff liable to pay the amount. This depends entirely upon the further question, whether the notes, at the time of the delivery thereof by the plaintiff to the defendant, became valid securi-

ties in the defendant's hands against the plaintiff. If they did, the defendant had the right to procure the indorsement of Chamberlain and transfer the same at his pleasure, and such transfer would give the plaintiff no right of action for their conversion. If they did not upon delivery by the plaintiff to the defendant become valid obligations in his hands, he acquired no title, and the subsequent transfer by him to purchasers in good faith, thereby making the plaintiff liable for the payment thereof, was an unlawful conversion by the defendant, and rendered him liable to the plaintiff for the damages thereby sustained. (*Decker* v. *Mathews*, 12 N. Y., 313, and cases cited.) The facts found show that, independent of the agreement of the 27th of March, 1857, between Stetson and the defendant, Coleman & Stetson were primarily liable for the payment of the drafts held by Chamberlain, and that the defendant was liable thereon as surety for them. The first inquiry is whether their relations were changed, and how, by that agreement. By that Stetson, who had assumed the liability of the firm of Coleman & Stetson, agreed to pay the drafts in question, and save the defendant harmless therefrom. By the same agreement the defendant agreed to give to Chamberlain his bonds for the amount of said drafts, payable in five years, with semi-annual interest, secured by a mortgage or trust conveyance of certain specified property as collateral security for the amount of said drafts thereupon delivered up by said Chamberlain, or make such other arrangement for the security or discharge of said notes as may be satisfactory to Chamberlain, and as the defendant may elect, and against which and all cost and expense thereon Stetson, upon performance of the agreement by the defendant, agreed to indemnify and save him harmless. The meaning of these provisions, it will be seen, is a little obscure, but I think, aided by the surrounding facts, the true intention of the parties can be made apparent. The firm of Coleman & Stetson was liable as principals for the payment of these drafts. This liability Stetson had assumed as to Coleman. Stetson had failed, and was then unable to pay the drafts. There was then a suit pending

thereon, which would soon terminate in a judgment and execution, which would be disastrous to Stetson, as he was keeping the Astor House. The object of the agreement appears to have been to avoid this result by the defendant's either paying or securing the drafts, and, in case of the latter, procuring an extension of the time of payment, the length of which only appears from the time specified for which the bonds given by the defendant were to run, and in either event the primary liability of Stetson for the payment of the drafts was to be preserved. The latter object was secured by the provision for the indemnity of the defendant by Stetson. Of the provisions of this agreement the plaintiff was fully apprised. He was not liable upon the drafts. The finding of the referee does not show whether the promise of the plaintiff to indorse the notes of Stetson, for the purpose of settling the suit brought by Chamberlain upon the drafts, was made before or after this agreement between Stetson and the defendant, but the evidence shows clearly that it was before. Thus it will be seen that the effect of the agreement was to impose upon the defendant an obligation as to Stetson to either pay the drafts in the first instance or to procure an extension of the time of payment by giving security to Chamberlain for future payment, relying upon the agreement of Stetson to indemnify him, and thus prevent the recovery of a judgment, etc., by Chamberlain. Whether the defendant would be able to or would effect this, might have been somewhat uncertain. When he paid the drafts in hand and his note, to Chamberlain, he was performing this agreement with Stetson. The referee finds that he did so in reliance upon the promise of the plaintiff to procure and indorse the notes of Stetson for the purpose of settling the suit and getting up the drafts. But how he could have relied upon this promise made before the making of the agreement, after he had thereby assumed the obligation to prevent the recovery of a judgment in the suit, it is a little difficult to perceive, as is also how the performance of this agreement with Stetson should give him a right to enforce the promise of the plaintiff to procure and indorse the notes.

The learned referee in his opinion says that a large discretion in settling the suit was given to the defendant, but this was in the mode of performing the agreement with Stetson, and to this plaintiff was not a party. He did not make the defendant his agent with any discretionary power. All he did, upon being told by the defendant that Chamberlain would take the notes of Stetson indorsed by him in settlement of the suit, was to promise that he would give such notes for that purpose. This did not constitute the defendant the agent of the plaintiff. When on the second of April the plaintiff indorsed the notes and delivered them to the defendant, it was for the purpose, or at least one of the purposes, was to settle the suit of Chamberlain, and thus prevent the speedy recovery of a judgment in that suit. This had already been accomplished. Of this the plaintiff was ignorant. In this change of condition, it was for the plaintiff to determine whether he would become surety to the defendant for Stetson's debt. He had never promised this, and by doing this no suit would be settled, for there was none pending. It is insisted by the counsel for the defendant that he, having paid the drafts as surety for the principal debtors, was subrogated to rights of the holder, and therefore entitled to continue the action. However that might have been in the absence of any agreement with Stetson, that would have precluded him from so doing. Making the payment was one of the alternate things he had thereby undertaken to do, and his remedy for making it was an action upon the agreement. It is also insisted that the notes were used so as to accomplish the entire object of the plaintiff in giving them, and that they were therefore valid in the defendant's hands, although such object was accomplished in a mode somewhat different from that intended by the plaintiff. The legal conclusion is correct, but the fact assumed, upon which it is based, is not so. One object of the plaintiff was to settle and stop the further prosecution of the suit upon the drafts. The notes were not used for, nor did they accomplish any such purpose. That had been effected before they were given. The defendant

claimed to use them as security for a payment made in performance of his agreement with Stetson. The plaintiff never agreed to become surety for Stetson upon that agreement.

It is also insisted that the plaintiff sustained no damage by the course taken by the defendant, as he would have been equally liable upon the notes had they been delivered by the defendant to Chamberlain upon a settlement of the suit. The answer to this is that had he known that the suit had been settled by the defendant in pursuance of his agreement with Stetson, he would not have indorsed the notes and would not become liable at all. It was for him to determine whether he would become the surety of Stetson upon his promise to indemnify the defendant for paying the drafts. It is enough that it does not appear that he intended or agreed to do this. My conclusion is that the purpose for which the plaintiff indorsed and delivered the notes to the defendant, never having been accomplished by them, the defendant acquired no title to them. That he had no right to use them as security for what he had before paid to Chamberlain on account of Stetson, and therefore the defendant was liable for a conversion by transferring them to a *bona fide* purchaser, thus making the plaintiff liable for their payment.

The finding of the referee, that the defendant did not by withholding information from the plaintiff that he had already settled the suit with Chamberlain intend to perpetrate any fraud upon him, is not material. Had this information been given, and the plaintiff had then indorsed and delivered the notes for the purpose of becoming surety for Stetson to him for the payment he had made, he would have been bound by the indorsement.

It is also claimed that the plaintiff ratified the acts of the defendant by his subsequent receipt of the drafts as paid. But this receipt by him was as agent for Stetson, and for the purpose of delivering the same to him. This was no ratification. Evidence was given tending to show that the plaintiff assented to the transfer of the notes by the defendant, and some evidence in answer thereto that such assent was procured fraudulently.

As the referee made no finding upon this evidence, I shall not determine as to the effect that should have been given to it.

The judgment must be reversed and a new trial ordered, costs to abide event.

All agree.

Judgment reversed.