[Patterson v. Neal.]

# Patterson *v.* Neal.

*Action to recover Damages for Death of Minor Son.*

1. *Action for death of minor son; when wrongful employment not shown.*—In an action brought by the father to recover damages for the death of his minor son, a boy 16 years old, where the complaint does not charge that the death was caused by any negligence on the part of the defendant or his employees, but avers the wrongful employment of the plaintiff's minor son by the defendant, it was shown that the deceased was killed by a falling rock, while engaged in mining coal in the mine operated by the defendant, that he had been employed by the defendant with the knowledge and consent of the plaintiff, as a driver in the mine, and three days before the accident exchanged places with his brother, who was employed as a coal digger, and while so working in the place of his . brother, the accident occurred resulting in his death. One C. was the general superintendent of the defendant's mining business, and was alone given authority by the defendant to employ coal diggers in the mine. W. was mine boss, but had no authority to employ coal diggers. but when C. employed coal diggers, W. assigned them to their places of labor in the mine. Neither the defendant nor C. employed the deceased to dig coal in the mine, nor was there any express employment of him by W. There was evidence on the part of the plaintiff tending to show that on the day of the exchange between the deceased and his brother, W. was informed of such exchange and made no objection, and knew that deceased was digging coal from that time until the accident. This was not known to the defendant or his superintendent, C. *Held*: (1) There was no implied contract of employment of the deceased by W., nor was there any implied authority in W. to employ deceased, or of his assent to his change of places with his brother; (2) that it was not shown that W. was clothed with apparent authority to contract for the defendant with persons to dig coal in said mine, and, therefore, it was not shown that there was any wrongful employment of the plaintiff's minor son by the defendant, so as to make defendant liable.

[Patterson v. Neal.]

APPEAL from the City Court of Birmingham.

Tried before the Hon. CHAS. A. SENN.

This was an action brought by the appellee, Joe Neal, against the appellant, James C. Patterson, to recover damages for the death of his minor son, who was alleged to have been wrongfully employed by the defendant in his coal mine. The plaintiff claimed $15,000 damages. The facts of the case necessary to an understanding of the decision on the present appeal, are sufficiently stated in the opinion.

Upon the introduction of all the evidence, the defendatn requested the court to give to the jury, among others, the following written charge: "If the jury believe the evidence, they must fnd for the defendant." The court refused to give each of the charges requested by the defendant, and to the refusal of each of said charges the defendant separately excepted.

There were verdict and judgment for the plaintiff, assessing his damages at $1,500. The defendant appeals, and assigns as error the several rulings of the trial court to which exceptions were reserved.

W. I GRUBB, for appellant, cited *Williams v. Railroad Co.,* 91 Ala. 639; *Brown v. Railroad Co.,* 64 Iowa 652; *Chase v. Railroad Co.,* 76 Iowa 675; 8 Amer. & Eng. Enc. of Law, (2d ed.), 943; *Brown v. Cummings,* 7 Allen, (Mass.) 507; *Bonnet v. Railroad Co.,* 89 Texas 72.

HENRY FITTS and JOSEPH F. COLLINS, JR., *contra.* If the father hires his son to perform a safe business, and directs him to obey his employer, and the employer puts the minor to a different and dangerous employment by which the child is endangered; without doubt the employer is liable to the father.—*William v. S. & N. Ala. R. R. Co.,* 91 Ala. 635, 639; *Railway v. Jones,* 76 Texas 350; *Goff v. Redeker,* 67 Texas 190; *R. R. Co. v. Brick,* 83 Texas 526; 7 Amer. & Eng. Ency. of Law, (1st ed.), 833 and note.

The contention of the plaintiff is that under the evidence in this case, there was implied authority of Winters to employ coal diggers. On the facts shown by the appellant's evidence, Winters was the defendant's general agent in the management and conduct of the business of operating this mine; therefore, any private *restriction* or *limitation of his authority* (such as that he would have to get Clark's consent before employing coal diggers), imposed by his principal can not affect the rights of third persons, who dealt with him in ignorance of such private instructions.—*Wheeler v. McGuire*, 86 Ala. 398; *Louisville Coffin Co. v. Stokes*, 78 Ala. 372; *McClung v. Spotswood*, 19 Ala. 171; *Whitcher v. Brewer*, 49 Ala. 122.

DOWDELL, J.—While the complaint in this case as originally filed and afterwards amended contained a number of counts, the cause was tried alone on the 7th count. No questions are raised on the pleadings. By the 7th count, the plaintiff claims for the death of his minor son, a boy sixteen years of age, who was killed by falling rock while he was digging coal in the defendant's mine. The complaint avers a wrongful employment of plaintiff's minor son by the defendant, in that he was so employed to dig coal without the knowledge and consent of the plaintiff, his father. It is not charged that the death was caused by any negligence on the part of the defendant, or his agents, but the right of action is rested upon the wrongful employment as alleged in the complaint.

On the trial the undisputed evidence showed that Matthew Neal, the minor son of the plaintiff, was killed by falling rock, while engaged in mining coal in one of the several mines operated by the defendant. Matthew had been employed by the defendant, with the knowledge and consent of the plaintiff, as a driver in the mine, and three days before the accident, Matthew exchanged places with his brother, who was employed as a coal digger in the mine, Matthew taking the place of his brother as a coal digger, and the brother the place

of Matthew as a driver, and pending this exchange of places and work between the two brothers, the accident resulting in the death of Matthew occurred. The defendant, Patterson, was at the time the owner and operator of several coal mines, including the one in question. Clark was the general superintendent of the defendant's mining business. Winters was an assistant under Clark, and was the mine boss of the mine in question. Clark alone as superintendent was given authority by the defendant to employ coal diggers in the mines. Winters had no such authority given him, that his authority and duty was to boss and direct the miners and the operations in the mines. That sometimes persons would apply to him for employment as coal diggers, and that whenever such was the case, he would report the application for employment to Clark, who would approve or disapprove, and that he never employed anyone to dig coal without having first obtained the approval and consent of Clark. That whenever Clark employed a coal digger for the mine in question, he sent such person to Winters, who assigned the coal digger to his place of labor in the mine, and that whenever Clark approved the application of one seeking employment through Winters, upon such approval or consent by Clark, he, Winters, would then make the employment and assign such applicant to a place in the mine to dig coal. It is not pretended that either the defendant or Clark, his general superintendent, employed Matthew to dig coal in the mine, or that either of them had any actual knowledge that he was engaged in that work. Neither is it pretended that there was any express employment of Matthew to dig coal in the mine, by Winters. The first contention is, that there was an implied contract of employment with Matthew by Winters, and, furthermore, that Winters had implied authority to employ, by reason of the principal's acquiescence in previous acts of employment of coal diggers by Winters. And the second contention of the plaintiff is, that Winters had apparent authority to give employment to dig coal in the mine. These contentions are based upon

[Patterson v. Neal.]

the following state of the evidence in the record: Winters was the boss of the mine, and superintended the laborers and the work in the mine. Two or three witnesses for the plaintiff testified, that on several occasions Winters gave employment to persons seeking work in the mines as coal diggers, and assigned them to their places and work, but, also, stated that they did not know, and could not say, whether he, Winters, in said instances had the previous approval and consent of the defendant, or of the general superintendent, Clark, to give the employment to said persons. In this connection the testimony of Winters was that he had never given employment to any person whatever, to dig coal without having first reported the application of such person to Clark, and getting his approval and consent to give the employment, and when such consent was obtained, he would then assign the applicant to his place and work in the mine. And the testimony of Clark was, that he never knew of Winters having given employment to any person to dig coal in the mine, without having first obtained his, Clark's, approval and consent to employ the person. We do not think upon the question of implied authority growing out of a knowledge of and acquiescence in the acts of the agent by the principal, there is any material conflict in the evidence. The facts testified to by plaintiff's witnesses as to the employment of persons to dig coal, by Winters, are entirely consistent with the further fact, that he had no authority to employ, and that in the given instances the employment came from Clark. Winters' acts and conduct in this respect, not being in excess of, or inconsistent with, authority and duties of his agency, they are not such as that a knowledge of them by the principal, would raise up an implied authority in him to employ coal diggers. We are quite clear that the evidence as to Winters' want of authority, express or implied, to employ persons to dig coal in the mine, is free from any conflict. It is true, that there was also evidence on the part of the plaintiff tending to show that on the day of the exchange of places between the

two brothers, Matthew going into the mine to dig coal, Winters being informed of the swap made no objection, and furthermore, that Winters knew that Matthew was digging coal from that time on until the accident, which happened three days later, and made no objection to it. This, without knowledge on the part of the defendant or his superintendent Clark, was of itself insufficient to afford any inference of ratification of Winters' conduct, or to show any implied authority in Winters to employ Matthew, or to assent to his changing places with his brother.

As to the second contention, that Winters was clothed with apparent authority to contract for his principal with persons to dig coal in the mine, it is clear that the case is not one where the doctrine of apparent authority has any application. This principle of the law operates by way of estoppel and to prevent the practice of fraud. If the plaintiff had contracted with Winters for the employment of his, plaintiff's, son to mine coal, and was suing for his son's wages, and the defendant should deny the authority of Winters as agent, to make the contract, the doctrine of apparent authority might be invoked. The doctrine of apparent authority can be invoked only by one who has been misled to his detriment by the appearance of authority in an agent with whom he deals, though not existing in fact. The principal is liable for the agent's acts within the scope of his actual authority, because it is his own act, and is liable for the agent's act within the scope of the apparent authority, which he holds the agent out as having, but which in fact he has not, because to dispute the existence of such apparent authority, would enable the principal to commit a fraud on innocent third persons relying on such appearance.—1 Am. & Eng. Ency. Law (2d ed.), p. 990. The principal may not hold out his agent to the world as possessing authority, and escape liability from his acts in dealing with innocent third persons within the scope of the agency, by secret limitations upon his authority. But if the party dealing with the agent does not rely upon his apparent authority, the

[Steele v. May, Buttrey & Cooney.]

principal will not be bound by the unauthorized acts, which are apparently but not actually within the scope of the agent's authority.—*Talmage v. Lounsberry*, 50 N. Y. 531. It is clear that the plaintiff here did not rely or act upon any apparent authority in the agent. The boy was not induced to dig coal by an appearance of authority in Winters, for the undisputed evidence shows that he began to dig coal without ever having consulted Winters. We are unable to see how the doctrine of apparent authority can have any application. It cannot be pretended that either the plaintiff or his son was misled by dealing with the agent under the appearance of authority. The authorities cited in brief of appellee, on this question, are all cases where the agent within the scope of his agency, dealt with persons, relying upon his apparent authority, and lay down the doctrine we have stated above. Not one of these cases is analogous in the facts to the one before us.

Our conclusion is, that on the law and the undisputed evidence in this case, the defendant was entitled to the general charge as requested, and the trial court erred in its refusal. The view we have taken of the case we think renders it unnecessary to notice other assignments of error.

Reversed and remanded.