[Garnett v. Parry Mfg. Co.].

# Garnett *v.* Parry Mfg. Co.

*Assumpsit.*

(Decided November 20, 1913.   Rehearing denied February 12, 1914.
64 South. 559.)

1. *Appeal and Error; Review; Presumptions.*—Where the court required a party to go to trial upon the complaint and the plea of the general issue with leave to give in evidence any matters of defense the same as if properly pleaded, and no exception was reserved to this action of the court, the case will be treated on appeal as if there were appropriate pleas setting up every defense to which the evidence was applicable.

2. *Sale; Price; Jury Question.*—Where the action was upon the common counts for the price of a dray sold and delivered to a merchant and after the receipt of the dray there was a controversy as to its fitness for the use intended it was a question for the jury whether an agent sent by plaintiff to adjust the matter made a new contract, and if so, the terms of that contract.

3. *Principal and Agent; Authority; Implied or Apparent Authority.*—Where a controversy arose after the receipt of a dray as to its fitness for the use intended, and the seller sent its agent to adjust the matter, as stated in its letter to the purchaser, the agent had apparent authority to make a new contract with the purchaser, agreeing that if the dray would not carry 5,000 pounds the purchaser would not have to pay for it.

APPEAL from Morgan Circuit Court.

Heard before Hon. D. W. SPEAKE.

Assumpsit by the Parry Manufacturing Company against W. W. Garnett for the price of a dray. Judgment for plaintiff and defendant appeals. Reversed and remanded.

WERT & LYNNE, for appellant. A purchaser of goods with warranty as to quality expressed or implied, may recover for breach of the warranty without notice to the seller of the defects, and return or tender of the goods. —70 S. W. 615. The return of the goods is waived where the failure to return was caused by the conduct of the seller in requesting the buyer to retain the goods

for further trial, or by promise to remedy the defect.—
35 Cyc. 428; 105 N. W. 601; 36 N. E. 378; 140 S. W.
319. The agent had apparent authority under the letter
to bind plaintiff to a new contract.—94 Ind. 85; 98 N.
W. 504.

E. W. GODBEY, for appellee. The warranty as here is
wholly ineffective save upon a rigid compliance with
the conditions.—70 Atl. 732. The court cannot substi-
tute another or different contract from the one made.—
109 N. W. 959; 134 U. S. 306; 121 N. W. 482; 69 S. W.
1072; *Berlin M. Wks. v. Lumber Co.*, 147 Ala. 692.
There are restrictions on the power of an agent to vary
a contract, and they are applicable here.—*Fulton v.
Sword M. Co.*, 145 Ala. 691. The court did not err in
excluding evidence tending to show a verbal warranty.
—*Thomas v. Irwin*, 55 South. 109.

DE GRAFFENRIED, J.—In this case the bill of ex-
ceptions contains the following: "After some time had
been devoted to the settlement of pleadings, and while
the pleadings still remain unsettled, the court required
the plaintiff and defendant to go to trial on the plain-
tiff's complaint and the defendant's plea of the general
issue, with leave to give in evidence any matters of de-
fense, special or otherwise, if a good defense to plain-
tiff's cause of action, the same as if specially and prop-
erly pleaded."

No exception appears to have been reserved by any
of the parties to the above ruling of the court, and we
therefore take it that, in this case, the gap, in so far as
the pleadings were concerned, was entirely let down by
consent of parties; and we will treat the case as if there
had been appropriate pleas setting up every defense to
which the evidence in the case can be held to be appli-

cable.—*Converse Bridge Co. v. Collins,* 119 Ala. 534, 24 South. 561.

(1) There was evidence tending to show that the Parry Manufacturing Company sold to W. W. Garnett a dray, for which Garnett agreed to pay the sum of $92.50. There was also evidence tending to show that, when the dray was ordered, and before it was delivered, the parties, by writing, determined the specifications of the dray, and that, in said writing, the Parry Manufacturing Company, by a special warranty, guaranteed each part of the dray to last for one year, with the understanding that, if any part of it broke or proved defective during said year, the broken or defective part should be returned to said manufacturing company, and a duplicate of such broken or defective part would then be sent to Garnett to replace such broken or defective part. The evidence further shows that, shortly after the making of the said agreement, the said dray was shipped to, and received by, the said Garnett. The evidence further tends to show that, upon the receipt of the dray, Garnett at once wrote the manufacturing company that the dray was not the dray ordered by him, and asking what the company desired him to do with the dray. We quote the following from the evidence of Garnett on the subject: "After receiving the dray and unpacking it and looking at it, it was not what we bought, and I so wrote them, and that it was not satisfactory, at all, and wanted to know of them what I should do with it. I think that was about the substance of the letter. I wanted to know what I should do with it—return it or keep it and try to use it."

Without regard to the question as to whether the dray was or was not the dray which Garnett ordered, Garnett testified as above stated, and he further testified that from that time until December 2, 1909, he and the

said manufacturing company were writing to each other with reference to alleged defects in the dray, and that on December 2, 1909, the following letter was written to him by the said manufacturing company: "Mr. W. W. Garnett, Decatur, Ala.—Dear Sir: We have your letter regarding the dray, and as our Mr. Davis will be near your place Saturday of this week, will have him call upon you. We trust he will be able to adjust this matter satisfactorily with you. Yours truly, Parry Manufacturing Co." Garnett further testified that, shortly after he received the above letter, the said Davis called on him with reference to the dray, and, to again quote the language of Garnett while on the stand as a witness, that: "We went back to the office and talked the matter over, and he said that dray was sufficient to do anything that we wanted with it, and said: 'Load it; if you want to put 5,000 pounds on it, put it on, and, if it don't hold it, you don't have to pay for it. * * * He told us not to return the wagon, and to use it, and, if it broke down, we would not have to pay for it."

There was evidence tending to show that a load of 2,000 pounds was a full load for the dray under discussion, and that 5,000 pounds was put upon the dray, and that, to use the language of a witness, "it did not stand up." There was other evidence from which the jury had the right to infer that, while the defendant, Garnett, kept the wagon and used it in his business, it was too light to meet the ordinary requirements of his business.

(2) It appears that the defendant, Garnett, is a merchant at Decatur, and that he ordered this dray to haul goods to and from the railroad station, and from his store to the residences of his customers. Davis was a traveling salesman of the Parry Manufacturing Company, and we think that there was evidence in this case

from which the jury had a right to infer that, at the time of the alleged conversation which we have above quoted from Garnett's testimony, Davis knew of the uses to which Garnett intended to put the dray.

(3) We have quoted the above portions of Garnett's testimony, and given our views as to some of the tendencies of the evidence, not for the purpose of indicating our opinion as to the weight or credibility of the evidence on the subjects to which that evidence was addressed, but the purpose of showing clearly our reasons for holding that, under the pleadings and the evidence in the case, the question as to whether the plaintiff, the Parry Manufacturing Company, was entitled to recover the full $92.50 which, when he ordered the dray, the defendant, Garnett, in writing agreed to pay for it, was a question of fact for the jury, and not a question of law for the court. This was an action on the common counts for the value of goods sold and delivered, and, as we understand this record, the plaintiff claims that it is entitled to recover the *contract* price of the dray, while the defendant claims, among other things, that, owing to the agreements which were made *subsequent* to the *delivery* of the dray and before it was *paid* for— it has never been paid for—the defendant is liable only for the market value of the dray as of the time when he received it. In our opinion, this question was, as already stated, a question for the jury, for the reasons set out below.

(4) There was, if the evidence of Garnett is true, immediately upon the receipt by Garnett of the dray, a controversy, begun by Garnett, between plaintiff and the defendant as to the *fitness* of the dray for the work for which Garnett intended it. Without regard to the good or bad faith of Garnett in originating this controversy, the plaintiff finally wrote Garnett the

letter which we have above set out, and in which Gar-
nett is informed that Mr. Davis, a representative of the
plaintiff, would call upon Garnett, and that the plain-
tiff trusts that "he will be able to adjust this matter sat-
isfactorily with you." There is a sharp conflict in the
testimony as to *what* occurred between Davis and Gar-
nett, and it was for the jury to settle that dispute. Cer-
tainly the jury had the right to infer from the said
letter that, when Davis called upon Garnett "to adjust
this matter" with him, Davis was armed with full pow-
ers in the premises and, could, in all things bind the
plaintiff by what he did in making the stated adjust-
ment.

"The principal is liable for the agent's acts within
the scope of his actual authority, because it is his own
act, and is liable for the agent's act within the scope of
the apparent authority, which he holds the agent out as
having, but which the agent in fact has not, because to
dispute the existence of such apparent authority would
enable the principal to commit a fraud on innocent
third persons relying on such appearance.—*Patterson
v. Neal,* 135 Ala. 477, 33 South. 39.

It seems clear that, if all the evidence of Garnett is
to be believed, the agent, Davis, possessed the apparent
—if not the actual—authority to make the agreement
which Garnett testifies the agent made with him when
he called on him after the receipt by Garnett of the
above-quoted letter dated December 2, 1909. The agent,
according to Garnett's testimony, called on him "to ad-
just the matter" pursuant to said letter of December 2,
1909, and, if the agreement was made, as testified to by
Garnett, that Garnett should keep the dray under the
statement by the agent that the dray would hold up
5,000 pounds, and that, if it did not do so, then that
Garnett would not have to pay for it, that agreement

was within the apparent authority of the agent in "adjusting the matter." It must be remembered that, if Garnett's testimony is true, the burden of his complaint about the dray, prior to the coming of the agent, was that it was too light for his work; and, if the plaintiff was willing to disregard the letter of the defendant's obligation, made when the dray was ordered, and send to the defendant an agent to adjust the matter, then we can see no reason why the agent, under the letter of December 2, 1909, above quoted, did not have the apparent authority to take back the dray or annul or modify the original contract, or make a new contract with the defendant with reference to the dray. The latter course, according to the evidence of Garnett, if that evidence is true, the agent appears to have pursued. "The agent's authority," whether general or special, "is what" his principal makes "it appear to be," and it "must be determined by the nature of his business, and is prima facie coextensive with the requirements."—*Montgomery Furniture Co. v. Hardaway, et al.*, 104 Ala. 100, 16 South. 29.

It seems therefore that, under the evidence in this case as we find it set out in the bill of exceptions, the trial court committed a reversible error in charging the jury, at the plaintiff's request, that, if they believed the evidence, the plaintiff was entitled to recover of the defendant the sum of $92.50.

Reversed and remanded.

DOWDELL, C. J., and ANDERSON and MAYFIELD, JJ., concur.