# McFarland v. Dawson.

### Action of Assumpsit.

1. *Acceptance of services rendered; implied contract.*—Where, in the absence of an expressed contract, valuable services are rendered by one person to another, which are knowingly accepted, the law will assume an obligation to pay for such services what they are reasonably worth.

2. *Action to recover for services rendered; burden of proof, and special contract set up for matter of defense.*—In an action to recover for services rendered, where the complaint contains common counts, if under a plea of payment the defendant seeks to show payment under a special contract, the burden is upon the defendant to prove the existence of said contract.

APPEAL from the City Court of Montgomery.

Tried before the Hon. A. D. SAYRE.

This was an action of assumpsit brought by the ap-

pellee, J. M. Dawson, against the appellant, Thomas Mc-Farland, in which the plaintiff sought to recover for professional services rendered to him by the defendant.

The plaintiff below was a practicing lawyer, and while in New York representing the interests of two sub-contractors, Newton and Tubman by name, in a deal then on, and that was likely to be consummated in a few days, by which they would be paid for work done on the Tennessee Central Railroad, was requested by the defendant to look after his interest in the same deal,—he being another of the sub-contractors on said railroad. It was represented to plaintiff that the deal would be consummated in a few days, and on this representation, he agreed to represent McFarland's interest in that particular deal, for 5%. Within a few days, this deal fell through, and finding that McFarland was only a sub-contractor and had no lien on the railroad, he informed McFarland of the failure of the deal, and of the necessary legal steps to give him a lien, and was requested by McFarland to take all legal steps necessary to the recovery of his claim. This was denied by the defendant, who claimed that he had a special contract with plaintiff to pay him five per cent. on what was collected on his claim against the railroad, and, no collection being made, there was to be no pay. Acting under the above mentioned instructions, plaintiff spent three months in New York, trying to effect a deal whereby this money would be secured, but in all cases without success. Having found that McFarland had no lien, he took legal steps to fix his lien on the road, and did fix it in the courts of Tennessee, and secured from the president of the railroad a confession of judgment for the amount due McFarland. Going to Tennessee to take the necessary court orders, he found that proceedings had been commenced to put the road in the hands of a receiver. He performed various legal services in this connection in the State courts of Tennessee, and finding a hostile application for a receiver in the Federal Court at Nashville, he successfully fought and defeated it. In the meantime, a receiver having been appointed by the State court, he filed an application to issue $50,000 of re-

ceiver's certificates, and he was successful in securing an order of court that not more than $5,000 thereof should be used for other purposes than the payment of the contractors on the road, and thereby, and under a contract,—which he made and wrote,—with the receiver, Mr. McFarland got nearly $10,000 in receiver's certificates. In the meantime various deals were taken up with different parties, in all of which he appeared for McFarland, traveling extensively and losing much time from his business, and finally a deal was consummated with certain Washington parties in respect to taking the claims at $70,000. This deal seeming to have been perfected, McFarland asked plaintiff what he would demand for his services, and he told him 8% of the amount. Only $10,000 was paid. Eight per cent. of that ten thousand dollars was the only pay he ever received from these people, and he had given McFarland credit for that amount. The Washington people failing to carry out their contract, this matter was taken up with various other persons in different places, always with a view of saving these contractors, but never with success, and much time and labor was consumed in looking after it. The contractors being all broken up, he made a contract with the receiver for them to resume work to get the $40,000 in receiver's certificates. Under that contract they did resume work, and got the receiver's certificates. When they quit work, they did so under a contract prepared by plaintiff. Plaintiff finally arranged a deal in St. Louis whereby they would get 80% of their certificates; but he found that some of the contractors had pledged their certificates as security in different places all over the country, and that it was impossible to collect them together and make the deal, and it fell through, but McFarland sold all certificates belonging to him to the parties in St. Louis with whom he came into communication through the plaintiff, but he sold them through another attorney. Plaintiff's services had never been paid for, and the charges he made were shown to be fair and reasonable. Defendant contended that he made a contract with the plaintiff to collect this claim against

the railroad and to pay him 5% of what he collected and nothing more, and that he had been paid on all moneys collected, but he admitted that he knew of all the work plaintiff was doing in his behalf while it was being done, and that he (defendant) wrote all the letters and telegrams and signed all the powers of attorney and contracts shown in evidence purporting to be signed by him, got the receiver's certificates under the contract made, and made no objection to plaintiff representing him in all these matters. The other facts in the case are sufficiently stated in the opinion.

Upon the introduction of all the evidence the court at the request of plaintiff gave the following written charge: (1.) "The court charges tthe jury that if they are reasonably satisfied from the evidence, that the plaintiff performed for the defendant, the service as testified about, then the law implies a promise on the part of the defendant to pay a fair and reasonable compensation for those services, unless there was an express agreement to the contrary, and the burden is upon him to prove such agreement by a preponderance of evidence." The defendant duly excepted to the giving of this charge; and also separately excepted to the refusal of the court to give following written charges requested by him: (2.) "The burden of proof is on the plaintiff to make out his case, and if the jury believe from the evidence that the services performed were done under a contract between the plaintiff and defendant the burden of proof is on the plaintiff to show what the contract was and the amount due him under it." (3.) "Under the evidence in this case plaintiff cannot recover any amount for services rendered in preparing the contracts between the receiver and the defendant." (4.) "Under the evidence in this case there can be no recovery by plaintiff for commissions on the amount collected by defendant on receiver's certificates."

There were verdict and judgment for the plaintiff. The defendant appeals and assigns as error the several rulings of the trial court to which exceptions were reserved.

[McFarland v. Dawson.]

C. S. RABB and RAY RUSHTON, for appellant, cited. *Humes v. D. I. L. Co.,* 98 Ala. 471; *A. G. S. R. R. Co. v. Frazier,* 93 Ala. 52; *T. C. I. & R. R. Co. v. Hamilton,* 100 Ala. 252; *Cookwood v. Wallace,* 12 Ala. 790; Weeks on Attys. pp. 561, 580.

LOMAX, CRUM & WEIL, *contra.*—The law in this State is settled that where valuable services are knowingly accepted the law will imply a contract for reasonable and fair compensation for such services. *Hood v. League,* 102 Ala. 228; *Wood v. Brewer,* 66 Ala. 570; *Lehman v. McQueen,* 65 Ala. 570. The charge numbered 3, refused to appellant, was a clear invasion of the province of the jury and was a charge on the effect of the evidence. It assumes that the appellant had proved the contract he set up, and that appellee was entitled to recover nothing except what he could claim thereunder. It was, in effect, a general affirmative charge on a matter about which the evidence was in direct conflict.—*David v. Malone,* 48 Ala. 428; *Harris v. Murphy,* 54 Ala. 161; 3 Brickell Digest, 110, § 52; *Carter v. Shorter,* 57 Ala. 253.

DOWDELL, J.—The plaintiff declared on the common counts for work and labor done and for legal services performed by the plaintiff for the defendant. The defendant filed four pleas, all of which except the second are in denial of the plaintiff's cause of action and amount to the general issue. The second plea is a plea of payment. There are only three assignments of error in the record. The first is to the giving of the written charge No. 1, requested by appellee, plaintiff in the court below. The other two are the refusal of the court to give 2d and 4th charges requested by appellant.

The charge given at the instance of the appellee to which exception was reserved correctly states the law, both as to implied promise to pay a fair and reasonable compensation for services performed, as well as to the burden of proof. It is a well settled proposition of law in this State that where in the absence of an express contract valuable services are rendered by one person

to another, which are knowingly accepted, the law will imply a promise to pay a fair and reasonable compensation for such services.—*Hood v. League,* 102 Ala. 228; *Wood v. Brewer,* 66 Ala. 570.

The appellee claimed nothing under a special contract, but relied on the comon counts for legal services rendered and work and labor done. After he had made out a *prima facie* case under the evidence and rested his case, the defendant sought to show a special contract between himself and the plaintiff and payment under such contract. There was no attempt on the part of the defendant to show payment except under the special contract, which he set up in his evidence. That the burden of proof was on him, under the plea of payment, is beyond controversy (*Schullman v. Brantley,* 50 Ala. 81), and if he could only show payment by setting up a special contract the burden of proof was equally upon him to show such contract. He sought to overcome the *prima facie* case of the plaintiff by showing an independent fact, the existence of which he affirms, and the law casts upon him the burden of proving it when it is disputed.—*Lehman v. McQueen,* 65 Ala. 570. Where a debtor set up a partial payment and asserted that he directed appropriation thereof to a particular debt, it was held that the onus was on him to prove it.—*Levystein v. Whitman,* 59 Ala. 345. Also, where the validity of the payment set up by the debtor depended upon the authority of the person receiving it, the burden of proving the authority was held to rest upon the party setting up the payment.—*McRea v. McDonald,* 57 Ala. 423. What we have said above equally applies to charge number two requested by appellant, and which the court properly refused.

The appellee made no claim for any commissions on receiver's certificates and offered no evidence looking to such commission, consequently charge number four requested by the appellant was properly refused as being abstract.—3 Brick. Dig. 113, § 106. We find no error in the record.

The judgment of the court below will be affirmed.