THE BOARD OF HIGHWAY COMMISSIONERS, Appellee, vs.
THE CITY OF BLOOMINGTON, Appellant. ·

*Opinion filed December 21, 1911—Rehearing denied Feb. 9, 1912.*

1. PARTIES—*suit to recover from city road-tax money due the township may be brought by the board of highway commissioners.* An action to recover from a city money raised by road and bridge taxes and belonging to a township is not improperly brought in the name of the board of highway commissioners, as the township is the beneficial plaintiff, and the recovery and satisfaction of a judgment will bar any other action on the same cause of action in the name of the town or any agent thereof.

2. SAME—*when objection to right of nominal plaintiff to sue is waived.* An objection that a suit to recover from a city money belonging to a township should have been brought in the name of the town or in the name of the township treasurer, instead of in the name of the board of highway commissioners of the township, is waived and cannot be insisted upon on appeal where it was not raised in the trial court.

3. CONSTITUTIONAL LAW—*when principle of uniformity of taxation is not violated.* The principle of uniformity of taxation is not violated by the levying of taxes for similar purposes by overlapping municipalities.

4. SAME—*sections 13 and 14 of Roads and Bridges act are not invalid.* Sections 13 and 14 of the Roads and Bridges act, concerning the levy of taxes for road and bridge purposes, do not violate the constitutional principle of uniformity of taxation because no exception is made exempting from such taxes property in the township which is within the limits of a city or village and which is taxed to maintain streets and bridges therein.

5. SAME—*an unconstitutional statute confers no rights and affords no protection.* An unconstitutional statute confers no rights, imposes no duties and affords no protection, and in legal contemplation the situation is the same as though such statute had never been passed.

6. ASSUMPSIT—*when assumpsit may be maintained although there is no privity of contract.* The action of assumpsit, under the common counts for money had and received, is an appropriate remedy to enforce the equitable obligation arising from the receipt of money by one person which belongs to another and which in equity and justice should be returned; and although the action is in form *ex contractu,* the alleged contract is purely fictitious and the right of recovery is governed by principles of equity, and

no privity of contract is necessary. (*Trumbull* v. *Campbell,* 3 Gilm. 502, *Hall* v. *Carpen,* 27 Ill. 386, and *Carpen* v. *Hall,* 29 id. 512, distinguished.)

7. SAME—*when assumpsit will lie to recover from city money due township.* Where a city has received from the collector of taxes money which it uses for its own purposes but which belongs to the township, an action of assumpsit for money had and received will lie against the city to recover such money, even though at the time the money was paid over to the city there was a law authorizing such payment, which was assumed to be valid but which was subsequently declared invalid.

8. SAME—*when city cannot raise question of legality of taxes.* In an action of assumpsit against a city to recover money raised by taxation for road and bridge purposes and paid over by the collector to the city under the authority of a statute which was subsequently declared invalid, the city cannot raise the question that the certificate of levy was defective and the taxes illegally levied.

9. INTEREST—*when interest is not recoverable.* Where money arising from road and bridge taxes is received and expended by a city in good faith, under the authority of a supposedly valid law, the mere fact that the township to which the money belongs brings suit to recover it after such law is declared invalid does not entitle the township to recover interest on the amount due.

APPEAL from the Circuit Court of McLean county; the Hon. COLOSTIN D. MYERS, Judge, presiding.

A. W. PEASLEY, City Attorney, FITZHENRY & MARTIN, and BARRY & MORRISSEY, for appellant.

STONE, OGLEVEE & FRANKLIN, for appellee.

Mr. JUSTICE VICKERS delivered the opinion of the court:

The Board of Highway Commissioners of the town of Bloomington, in McLean county, brought an action of assumpsit, based on the common counts, against the city of Bloomington to recover from the said city the amount of taxes collected on property in Bloomington township located within the corporate limits of the city of Bloomington and paid over by the collectors of revenue to the city

of Bloomington under the third proviso of section 16 of the Road and Bridge law, as amended in 1909. The taxes in question were levied under sections 13 and 14 of the Road and Bridge law in 1909 and were collected and paid over to the city in 1910. The Board of Highway Commissioners of Bloomington township levied the limit of thirty-six cents for road and bridge purposes under section 13 of the Road and Bridge law and made a certificate that a contingency existed in said township requiring a greater levy than thirty-six cents, and obtained the consent of the board of town auditors and the assessor for an additional levy of twenty-five cents under section 14 of the Road and Bridge law, as amended in 1909, which said levies were spread upon the property of the township and collected with other taxes by the collectors. By the third proviso of section 16 of the Road and Bridge law, as amended in 1909, it is enacted "that in all cities of twenty thousand inhabitants or upwards, all of said tax required to be levied and collected under said sections 13 and 14, within the limits of such city, shall be paid over to the treasurer of such city for city purposes." The city of Bloomington having a population of more than twenty thousand inhabitants, under said proviso the taxes in question were paid over to the treasurer of said city. The money was received by the city in two installments, $24,670.81 being paid over May 5, 1910, and the sum of $16,316.67 being paid on August 15, 1910. The city appropriated the said funds by ordinance and used the same for the repair and maintenance of its streets. At the December term, 1910, of this court, in the case of *People* v. *Fox,* 247 Ill. 402, this court held that the third proviso of said section 16 of the Road and Bridge law was unconstitutional and void, in that it granted a special privilege to certain cities based upon a mere arbitrary classification. Upon the assumption that the decision of this court in the *Fox case* established the right of the board of highway commissioners to the money paid over to the city under the

unconstitutional proviso of section 16, said highway commissioners brought this action of assumpsit and recovered a judgment for the amount so paid over and $1384.93 interest. From this judgment the city of Bloomington has prosecuted the present appeal.

The appellant contends that this suit was improperly brought in the name of the commissioners of highways; that the suit should have been brought either in the name of the town, under paragraph 46 of chapter 139 of Hurd's Statutes of 1909, or in the name of the township treasurer, for the reason that the money, being public funds belonging to the township, would be payable to such treasurer. There is no force in this objection. The township is the beneficial plaintiff and real claimant of the money sued for. A recovery of a judgment and a satisfaction thereof in the present action would be a bar to any future action, either in the name of the town or any other agent thereof, for this cause of action. Aside from this, we do not find that this question was raised in any way in the lower court. Appellant has therefore waived the right to raise it here.

Appellant next contends that sections 13 and 14 of the Road and Bridge law are unconstitutional as applied to a situation such as exists here, for the reason that there is no provision in said sections exempting property in that portion of the township which is embraced within the limits of the city of Bloomington. In support of this contention appellant's argument is that, the city of Bloomington being required to levy and collect taxes to maintain the streets and bridges within the city, the property of its citizens within that portion of the city embraced within the township of Bloomington cannot again be taxed by the township for the purpose of maintaining the roads and bridges of the township, and that to do so violates section 1 of article 9 of the constitution, in that it subjects the property in one part of the city to double taxation for one and the same purpose, and that said sections of the statute violate

the principles of uniformity in its application to townships having a city or village partly or wholly in such townships. The question thus raised has not been heretofore decided by this court in respect to the particular statutes here involved, but questions involving the principle which must here control have frequently been before this court. Cooley, in his work on Taxation, (p. 238,) says: "Taxing districts may be as numerous as the purposes for which taxes are levied. The district for a single highway may not be the same as that for a school house located upon it. It is not essential that the political districts of the State shall be the same as the taxing districts, but special districts may be established for especial purposes, wholly ignoring the political divisions. A school district may be created of territory taken from two or more townships or counties, and the benefits of a highway, a levee or a drain may be so peculiar that justice will require the cost to be levied either upon part of a township or county or upon parts of several such subdivisions of the State."

The principle of uniformity is not violated by levying taxes by two overlapping municipalities on the same property, even though it be for a similar purpose. (*Baird* v. *People,* 83 Ill. 387.) In the case above cited, the city of Morrison brought an action to recover that portion of the taxes levied by commissioners of highways for road and bridge purposes on the property in that portion of the township which was embraced within the corporate limits of the city under section 120 of chapter 121 of the Revised Statutes of 1874, which provided that such taxes should be paid to the city. In thus discussing that question, this court, speaking by Mr. Justice Scholfield, on page 389, said: "It is said, why should the city expect any part of the tax with which to pay damages by reason of the opening, altering or laying out new roads? To our minds the answer is obvious. The city is burdened with the entire expense of laying out, improving, repairing, etc., all ave-

nues of travel within its limits, whether they be called
streets, boulevards, avenues, alleys. or roads or highways,
and of constructing and repairing bridges, culverts, etc.;
and it was deemed by the legislature to be unjust to bur-
den it also with the expense incident to the public highway
system beyond its limits. But the township system fre-
quently necessarily includes cities within the towns, which
are created as subdivisions of the counties and for which
commissioners of highways are elected. In levying taxes
the commissioners of highways observe the constitutional
mandate of 'uniformity within the jurisdiction of the body
imposing the same,' and thus extend the tax alike within
as beyond the city limits, throughout the town; but when
collected, that arising from property within the city is to
be used within the city, and that from property beyond its
limits is to be used beyond its limits."

The same principle was involved in the case of *Wilson*
v. *Board of Trustees,* 133 Ill. 443. In that case the valid-
ity of the act authorizing the organization of sanitary dis-
tricts embracing the territory of cities and other municipal-
ities was involved. The validity of the act was challenged
on the ground that to authorize the organization of such
districts with power to become indebted to the constitu-
tional limit, and embracing other municipalities which also
had a like power of contracting indebtedness, would, in ef-
fect, destroy the constitutional limitation as to municipal
indebtedness. The validity of the act was sustained, and
this court held that the constitutional limitation upon the
extent of corporate indebtedness applies to each municipal
corporation singly, and that where one municipal corpora-
tion embraces, in part, the same territory as others, each
may contract corporate indebtedness up to the constitu-
tional limitation, without reference to the indebtedness of
any other corporation embraced wholly or in part within
its territory. The township and the city are wholly distinct
municipal corporations and are organized for different pur-

poses, and each may exercise the taxing power for legitimate corporate purposes within its own territorial limits, without reference to the exercise of like powers by other municipalities organized for different purposes whose territory is partly within such township.

The court did not err in refusing to hold appellant's proposition of law reciting that sections 13 and 14 of the Road and Bridge law were unconstitutional.

Appellant next contends that there can be no recovery in this action because there is no privity between the parties to the suit and no basis in the evidence for the finding that the money in question was received by appellant for the use of appellee. There is no dispute about the facts. In point of fact, at the time the money in question was collected and paid over it was doubtless supposed by all parties that it properly and legally belonged to the appellant. There was nothing in the nature of a contract relation in fact between the appellant and the appellee in respect to these funds. If appellee can sustain the recovery it must be upon some theory other than that there was a privity in fact, resulting from a contractual relation. The facts here present the question fairly whether an action in assumpsit can be maintained under a count for money had and received to the use of the plaintiff in the absence of any contractual relation whatever between the parties, and where the only evidence in support of such action is proof of the fact that money has been paid to defendant which legally belonged to and ought to have been paid to the plaintiff. Appellant answers this proposition in the negative, for the reason that there is no privity of contract between the parties. To this the appellee replies that no privity is required, other than that implied by the law, where one person has money in his hands, however received, which *ex æquo et bono* he ought to restore to the owner.

There is some confusion in the books in regard to the scope of the remedy in assumpsit for money had and re-

ceived. Some courts have fallen into error by supposing
that this action can only be maintained where there is an
express contract, or a contract implied in fact from the
situation or conduct of the parties. By the common law
the word "contract" included all rights which could be en-
forced by any of the actions *ex contractu.* By the common
law classification every contract was either express or im-
plied. Under these two heads were classified every form
of obligation which was by the common law enforcible by
an action *ex contractu.* Taking from the general mass all
of the rights growing out of express contracts which were
enforcible by actions *ex contractu,* we have left a miscel-
laneous group of rights which are enforcible by actions
*ex contractu,* which are usually treated under the classifi-
cation of implied contracts. At the present time that great
body of rules of the common law which defines the rights,
duties and obligations of the citizen, known as substantive
law, is regarded as the principal and most essential part
of the law, while in theory, at least, the adjective law of
pleading, practice, evidence, remedies and procedure is sec-
ondary, and is designed merely to secure and enforce in an
orderly manner the substantive law. In the earlier stages
of the common law the procedure was the principal and the
substantive law was in reality a mere appendix or supple-
ment. The tenacity with which the ancient common law
courts clung to the form of action and remedy has given
rise to the creation of numerous fictions in the substantive
law in order to fit an inexorable remedy to a new situation.
The action of assumpsit was devised for the purpose of re-
covering damages for the non-performance of a parol or
simple contract. (3 Johns. Cases, 60.) The word is de-
rived from the Latin *assumere,* meaning to assume or to
undertake. (Bouvier's Law Dict.) In the law of con-
tracts the word was understood as an undertaking, either
express or implied, to perform a parol agreement. An "ex-
press assumpsit," by the common law, was "an undertak-

ing made orally, by writing not under seal or by matter of record, to perform an act or to pay a sum of money to another." An "implied assumpsit" was defined to be "an undertaking presumed, in law, to have been made by a party from his conduct, although he has not made any express promise." (Bouvier's Law Dict.) There were two general forms in the action of assumpsit. "Special assumpsit" was brought upon an express contract or promise, while "general assumpsit" was brought upon an implied contract. (2 Smith's Leading Cases, 14.)

It will thus be seen that there is a general agreement between a special assumpsit and an express contract, and general assumpsit and an implied contract. As ordinarily understood, the only difference between an express contract and an implied contract is, that in the former the parties arrive at their agreement by words, either oral or written, sealed or unsealed, while in the latter their agreement is arrived at by a consideration of their acts and conduct. (2 Page on Contracts, sec. 771.) In both of these cases there is, in fact, a contract existing between the parties, the only difference being in the character of evidence necessary to establish it. A familiar illustration of an implied contract is, where one person, in the absence of any express agreement, renders valuable services to another which are knowingly accepted by such other, the law will imply a promise to pay a fair and reasonable compensation for such services. (*McFarlane* v. *Dawson*, 125 Ala. 428.) If an attorney renders services without any express agreement as to the amount of compensation to be received, the law implies a promise to pay him reasonable compensation for the work done. (*Miller* v. *Tracey*, 86 Wis. 330.) These illustrations are examples of genuine implied contracts, in all of which there is some act or line of conduct as a basis for the implication and which furnishes the necessary privity to support the action of general assumpsit. This class

of implied contracts is sometimes called contracts implied as of fact. (Page on Contracts, *supra.*)

After subtracting express contracts and contracts implied in fact, there is still left another large class of obligations, to enforce which the action of general assumpsit is a well established remedy. The principle upon which this latter class of obligations rests is equitable in its nature, and was, like most other equitable principles, derived from the civil law. This obligation was under the civil law designated *"quasi-contractus."* Stated as a civil law principle, it was "an obligation similar in character to that of a contract, but which arises not from an agreement of parties but from some relation between them or from a voluntary act of one of them, or, stated in other language, an obligation springing from voluntary and lawful acts of parties in the absence of any agreement." (Howe's Studies of Civil Law, 171; Morey on Roman Law, 371.) In *quasi* contracts the obligation arises not from consent, as in the case of contracts, but from the law or natural equity. "The term was not found in the common law but it has been taken by writers upon the common law from the Roman law and may be considered now as quite domesticated, even to the extent of being used as the title of a very valuable common law text book,—Keener on Quasi Contracts." (Bouvier's Law Dict.) Page, in his late work on Contracts, (vol. 2, p. 1166,) in discussing the term *"quasi* contract" says: "The term *'quasi* contract,' while but little used in law, is a term of considerable antiquity in English law. The term *'quasi ex contractu'* is used in Bracton to include 'agency, wardship, the division of common property, the distribution of an inheritance, an action arising out of a testament, a suit to require a sum paid not due, and such like.' "

The class of obligations now under consideration, and which are treated in works on contracts as "contracts implied in law," or *quasi* contracts, are recognized and en-

forced by common law courts by means of a general assumpsit. The liability exists from an implication of law that arises from the facts and circumstances independent of agreement or presumed intention. (*Pract* v. *Daniels,* 20 Colo. 100.) In this class of cases the notion of a contract is purely fictitious. There are none of the elements of a contract that are necessarily present. The intention of the parties in such case is entirely disregarded, while in cases of express and implied contracts in fact the intention is of the essence of the transaction. In the case of contracts the parties fix their terms and set the bounds upon their liability. As has been well said, in the case of contracts the agreement defines the duty, while in the latter class of cases "the duty defines the contract." (*Hertzog* v. *Hertzog,* 29 Pa. St. 468; *Columbus, Hocking Valley and Toledo Railway Co.* v. *Gaffney,* 65 Ohio St. 104; 61 N. E. Rep. 152.) The action of assumpsit, under the common counts for money had and received, is an appropriate remedy to enforce the equitable obligation arising from the receipt of money by one person which belongs to another and which in equity and justice should be returned. (*Gaines* v. *Miller,* 111 U. S. 395; *Pauly* v. *Pauly,* 107 Cal. 8; *Brown* v. *Woodward,* 75 Conn. 254; *Wilson* v. *Turner,* 164 Ill. 398.) The action is in form *ex contractu,* but the alleged contract being purely fictitious, the right to recover does not depend upon any principles of privity of contract between the plaintiff and the defendant and no privity is necessary. (2 Page on Contracts, sec. 789, and cases there cited.) The right to recover is governed by principles of equity although the action is at law. The action is maintainable in all cases where one person has received money or its equivalent under such circumstances that in equity and good conscience he ought not to retain it and which *ex æquo et bono* belongs to another. (*Jackson* v. *Hough,* 38 W. Va. 236; *Merchants' Bank* v. *Barnes,* 47 L. R. A. 737.) A few cases illustrating the application of the principle under con-

sideration will be sufficient to enable us to determine the question now under discussion.

Where A receives money from X which belongs to B, without B's consent, the general rule is that in the absence of special circumstances B may recover such money from A. (*United States* v. *Bank*, 96 U. S. 30.) Where a sheriff retains money which he claims to be due him as commission but which legally belongs to a board of education, he is liable in an action for money had and received. (*Socorro Board of Education* v. *Robinson*, 7 N. M. 231.) A public *quasi* corporation, such as a county, which receives taxes and applies them all to its own use when it should pay bonds issued by the town out of such taxes, is liable to such town therefor. (*Strough* v. *Jefferson County*, 119 N. Y. 212; 23 N. E. Rep. 552.) Where a county receives money belonging to other persons without authority it must refund to such persons. (*Chapman* v. *County of Douglas*, 107 U. S. 348.) Where taxes are paid to a county by a sheriff when they should have been paid to a city, the city may recover such taxes from the county. (*Salem* v. *Marion County*, 25 Ore. 449; 36 Pac. Rep. 163.) Where a county is divided and the original county is legally entitled to the taxes when the division was made but which had not been then paid but the State official through whose hands such taxes passed paid a part thereof to the new county, the original county may recover such taxes from the new county. (*Colusa County* v. *Glen County*, 117 Cal. 434; 49 Pac. Rep. 457.) Where a stockholder receives dividends from a corporation which he knows to be insolvent and that such dividends are paid out of the capital of the corporation, he may be compelled to re-pay such dividends in an action brought by the receiver of the company. (*Warren* v. *King*, 108 U. S. 389.) Where a school trustee expends money for the actual benefit of township schools which by law he is required to pay over to another school corporation, such township is liable to such corporation

for the amount of money thus expended. (*Center School Township* v. *School Comrs.* 150 Ind. 168; 49 N. E. Rep. 961.) In *State* v. *St. Johnsbury,* 59 Vt. 332, it was held that where fines were improperly paid to a village instead of the county clerk for the use of the State, an action for money had and received was maintainable by the State against the village. This case reviews many cases, both English and American, and reaches the conclusion that the action was properly brought, and that no privity other than that implied by law was necessary.

The facts in the case at bar are, that appellant received from the collectors of taxes the money here sought to be recovered. At the time this money was paid over by the collectors and received by appellant there was in the statute a provision which, had it been valid, would have settled the right of appellant to this money. The statute, however, under which this money was received by appellant has been declared unconstitutional. To be sure, the decision of this court declaring said statute unconstitutional was rendered after the money had been paid over to appellant, but this circumstance does not affect the legal status of the parties in the least. The rule is universal that an unconstitutional law confers no right, imposes no duty and affords no protection. It is in legal contemplation as though no such law had ever been passed. (*Norton* v. *Shelby,* 118 U. S. 425.) There being no question of wrongful intention on the part of anyone in connection with this transaction, the unconstitutional statute must be eliminated from all consideration. With this statute out of view the situation is simplified. We merely have the case of the collectors of taxes voluntarily paying to the appellant, and the appellant voluntarily receiving, public funds which under the law belong to Bloomington township. The money in question must be conclusively presumed to have been levied and paid by the tax-payers for the benefit of the only municipality that had a legal right to receive it. The equitable right to this fund

follows the legal title thereto. Applying the foregoing principles to these facts, we have no ·hesitation in coming to the conclusion that an action of assumpsit for money had and received to the use of appellee is maintainable to recover the money in question, and that it is not necessary that there should be any privity whatever between the parties other than such privity as is implied by law, to warrant a recovery.

Appellant has cited and relies on four decisions of the Appellate Court of this State to sustain the proposition that an action for money had and received cannot be maintained in any case unless there is privity in fact between the parties. These cases are. *Town of Rushville* v. *President of Rushville,* 39 Ill. App. 503, *City of· Charleston* v. *Commissioners of Highways,* 52 id. 41, *School Directors* v. *School Trustees,* 61 id. 89, and *City of Olney,* v. *Gaddis,* 90 id. 622. These cases are in point, but they are out of line with the weight of authority on this subject and contrary to the underlying principle governing actions for money had · and received. If these decisions were authoritative we might feel called upon to examine them more critically, but since they are not authority except in the cases wherein they were rendered, no necessity exists for any extended discussion of them.

There is nothing in the cases of *Trumbull* v. *Campbell,* 3 Gilm. 502, *Hall* v. *Carpen,* 27 Ill. 386, and *Carpen* v. *Hall,* 29 id. 512, when carefully analyzed, that conflicts with the views herein expressed. The views which we have herein expressed are supported by numerous decisions of this court: *Taylor* v. *Taylor,* 20 Ill. 650; *Allen* .v. *Stenger,* 74 id. 119; *Barnes* v. *Johnson,* 84 id. 95; *School Directors* v. *School Directors,* 105 id. 653; *Laflin* v. *Howe,* 112 id. 253; *Chemical Nat. Bank of Chicago* v. *City Bank of Portage,* 156 id. 149; *Wilson* v. *Turner,* 164 id. 398; *First Nat. Bank of Springfield* v. *Gatton,* 172 id. 625.

Appellant contends that the court erred in allowing a recovery for the taxes levied and collected under section 14 of the Road and Bridge law because of certain alleged defects in the certificate of the highway commissioners respecting the existence of a contingency. Conceding, for the sake of argument, that the certificate was defective under the decisions of this court, we are of the opinion that appellant is not in a position to take advantage of such defect. If the tax-payers saw proper to waive any objection that might have been made by them to the form of the certificate and voluntarily paid the taxes and such taxes came into the treasury of appellant, it cannot now be heard to say that said taxes were illegally levied. *Yates* v. *Royal Ins. Co.* 200 Ill. 202; *City of Chicago* v. *McGovern,* 226 id. 403; *Illinois Glass Co.* v. *Telephone Co.* 234 id. 535.

The appellant contends that the court erred in allowing $1384.93 interest upon the amount of money paid to the city. In our opinion this error is well assigned. There is nothing in this record to impeach the good faith of appellant in the receipt and expenditure of this money. While it did not belong to the city, the existence of the third proviso in section 16 of the Road and Bridge law was an apparent authority for the receipt of this money by the city. There is no element of tort connected with the receipt or conversion of this money nor has there been any vexatious delay in paying it over to appellee. There is therefore no legal ground upon which the claim for interest can be sustained. Appellee in its brief virtually concedes the error in this respect, and suggests that if this court should conclude that the interest item was improperly included in the judgment a *remittitur* of that amount will be made. The amount of the judgment below was $30,037. The amount is not in question except as to the item of interest. A *remittitur* of $1384.93 will be considered as entered by appellee and the judgment below affirmed for $28,652.61.

*Judgment affirmed in part.*