# Ala. West. R. R. Co. *v.* Bush.

## *Assumpsit.*

(Decided April 17, 1913.   62 South. 89.)

1. *Railroads; Officers and Agents; Scope of Authority.*—Civil engineers engaged by a railroad company to supervise the construction of track cannot be assumed to have authority to make contracts for the company, in connection with such construction.

2. *Principal and Agent; Scope of Authority; Notice.*—The knowledge of an agent is not notice to the principal, unless it be with regard to the very matter which the agent is employed to transact for the principal and comes to him while engaged in transacting such business.

2. *Work and Labor; Implied Promise.*—Where another had expressly contracted to do certain work, and the person to whose benefit it inured did not know that the one claiming compensation therefor under an implied contract was doing the work, the rule

that the law presumes an obligation to pay the reasonable value of services rendered by one person for another, and knowingly accepted, does not apply.

4. *Same; Liability.*—The fact that a railroad company escaped its liability to the contractors who had originally engaged to do the construction work would not make the company liable to another person doing such work where it was done without the knowledge of the company, although the company received the benefits thereof.

APPEAL from Franklin Circuit Court.

Heard before Hon. C. P. ALMON.

Assumpsit by Sam M. Bush against the Alabama Western Railroad Company. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

The action was on the common counts for work and labor done by plaintiff for defendant in the years 1906-07 at its request. Plaintiff did a large amount of construction work on defendant's railroad track between stations 420 and 444, designated as the "Branch creek work," also between stations 1798 and 1904, designated as the "Red Bay work." At the time plaintiff did this work, defendant had contracts with the Talley-Bates Company, or its assigns, as an original contractor for the construction of all these portions of its track, and plaintiff was engaged in track construction as a subcontractor with and under the Talley-Bates Company. Plaintiff claims that these defendants are directly liable to him for the work in question, by reason of arrangements made with him by several of defendant's civil engineers, who were at the time engaged in supervising and directing the work of construction by which he was requested to do the work, with the express promise that defendant railroad company would pay him for it. The Branch creek work was done between May 25 and August 9, 1906. Plaintiff testified as to this that he had no subcontract with any one, but made an original contract in May, 1906, with John M. Baldwin, who acted for defendant. It is without dispute, how-

ever, that defendant railroad company furnished all estimates, and made all payments, relative to this work, directly to the Talley-Bates Company and none to plaintiff; and on all the estimate sheets plaintiff was designated as a subcontractor. He received his payment checks from the Talley-Bates Company, and allowed it to retain the customary 10 per cent. pending the completion of the work, and he never asked defendant to pay for it until after the Talley-Bates Company abandoned their contract with defendant, and quit work in July, 1907. As to the Red Bay work, plaintiff testified that he had a contract with the Talley-Bates Company for that, but, being doubtful about getting his pay, he talked with W. A. Castler, in August, 1906, before beginning the work, and he told him that the railroad company would pay him, and to go ahead and do the work. For all of this work between August, 1906, and May, 1907, inclusive, plaintiff received pay exclusively from the Talley-Bates Company. After said company quit work in July, 1907, the railroad company paid plaintiff directly for his work done in July and August, 1907, but did so in no other instance. While this work was going on plaintiff discussed it with A. S. Baldwin at Iuka, Miss., who told him to go ahead and defendant would pay him for it. John M. Baldwin was defendant's assistant division engineer, W. A. Castler was its resident engineer on the Red Bay work, and A. S. Baldwin was chief engineer, residing at Chicago. None of them had any duty or authority in the matter of making contracts, or letting or subletting construction work for defendant railway company, and the two former denied ever having made the statement ascribed to them by plaintiff. The defendant requested in writing the affirmative charge, which was refused.

PERCY, BENNERS & BURR, W. H. KEY, BLEWETT LEE, and C. L. SIVLEY, for appellant. Where an owner has let a contract for the erection of a structure on his land, he may presume that a third person who does work in the erection of that structure does it for the person to whom he has let the contract; he is not estopped by the acceptance and use of the results of such labor to deny liability to pay the third person for it, nor to deny the authority of his agent who undertakes to bind him to pay such third person so to bind him.—*Campbell v. Day,* 90 Ill. 363; *Gardner v. Boston & Maine R. R.,* 70 Maine 181; *Bond v. Pontiac, etc., R. R.,* 29 N. W. 482-485, (Mich.); *Hartnett v. Christopher,* 61 Mo. App. 64. The authority of the engineers extended only to the laying out and supervision of the work of the construction of the railroad; it is not contended that they had any express authority from the railroad company to let contracts for the construction of the railroad, or to bind it for the payment for work done in its construction; and such authority cannot be implied from the powers which the engineers did have, nor could what they actually did mislead any one into thinking they had such power. The functions of the engineers were in legal effect the same as those of an architect employed to supervise the construction of a building.—*Gardner v. Boston & Maine R. R.,* 70 Maine 181; *Watts v. Metcalf,* 66 S. W. 824, (Ky.); *Bond v. Pontiac, etc., R. R.,* 29 N. W. 482-485; *Maas v. Jarvis,* 46 N. Y. Sup. 544; *Campbell v. Day,* 90 Ill. 363; 5 Ency. of Law & Practice, 76, et seq.; 31 Cyc. 1397; *Thayer v. Vt. Cent. R. R.,* 24 Vt. 440; *Lewis v. Slack,* 27 Mo. Apps. 131; *Templin v. Chicago, etc., R. R.,* 35 N. W. 634; *Blanding v. Davenport, etc., R. R.,* 55 N. W. 81; *Wolf v. Davenport, etc., R. R.,* 61 N. W. 847; *Campbell v. Trustees Cin. Sou. Ry.,* 34 A. & E. R. R. cases, 113. The making of payments

by the railroad company directly to Bush, after the principal contractor abandoned its contract and work, did not render the railroad company liable to Bush for the value of the work done by him.—*Gatley v. Kniss,* 21 N. W. 21. The fact that Bush's work was supervised by defendant's engineers afforded no inference of an implied obligation on defendant's part to pay him for it. —*Thorn v. Roman,* 89 Ala. 379. The alleged promise of A. S. Baldwin on Bush's complaint that he had not been paid, to the effect that the company would pay Bush, aside from any question of Baldwin's lack of power to bind the defendant, was without consideration and unenforcable. Bush promised nothing and gave up nothing.—*Read v. Roman,* 107 Ala. 366; *Clark v. Jones,* 85 Ala. 127; *Byrd v. Hickman,* 159 Ala. 505. The general rule is that where there is an express contract, plaintiff cannot resort to an implied one.—*Huntsville, etc., R. R. Co. v. Corpening,* 97 Ala. 687; *Jonas v. King,* 81 Ala. 287; Bishop on contracts, sec. 187. The rule that a contract will not be implied to pay for work done on an owner's premises, where there is an express contract for the doing of the work, applies as well in the case where the express contract is between the plaintiff and a third person as where the express contract is between the plaintiff and the owner.—*Kansas City Planing Mill Co. v. Brundage,* 25 Mo. Apps. 268; *Wadsworth v. Hodge,* 88 Ala. 500; *Hawkins Lumber Co. v. Brown,* 100 Ala. 217; *Lake Erie, etc., R. R. v. Eckler,* 13 Ind. 65; *A. G. S. R. R. Co. v. Moore,* 109 Ala. 393; *Perry v. Bailey,* 12 Kansas 415; *Cleaves v. Stockwell,* 3 Maine 341; *Lauer v. Bandow,* 28 Am. Rep. 571; *Lankford v. Greene,* 52 Ala. 103-104; *Shumake v. Nelms,* 25 Ala. 126-135; *Mass. Gen. Hospital v. Fairbanks,* 37 Am. Rep. 304. In order to raise an implied promise to pay for work done on the part of one receiv-

ing the benefit of such work, it is not sufficient to show merely that the work has been done, is unpaid for, and that the defendant has received the benefit of it; it must also appear that the defendant accepted the work knowingly, that is that he would be looked to directly for payment for it. And it must not appear that the one receiving the benefit of it has the right to attribute the doing of the work to an express contract which he has made for its execution.—Cases cited under I; Page on Contracts, section 774; *Irvin v. Strother,* 163 Ala. 484; *Hood v. Teague,* 102 Ala. 228; *Indianapolis, etc., R. R. v. O'Reilly,* 38 Ind. 140; *McCreary v. Brown,* 162 Ala. 442. An implied authority is limited to acts of a like nature with those from which it is implied.—2 Ency. of Law and Practice, 952, and illustrations there cited. Apparent authority arises out of estoppel and to prevent fraud.—*Patterson v. Neal,* 135 Ala. 477; *La-Fayette Ry. v. Tucker,* 124 Ala. 514; 2 Ency. of Law and Practice, 959-960; *Fulton v. Sword Medicine Co.,* 145 Ala. 331. "When a plaintiff's case hinges on an apparent instead of a real authority, he must show that the defendant's conduct, whether it was so intended or not, was adapted to and did mislead the plaintiff into believing the apparent authority was real, and so believing to rely on it."—*Hatchett v. Van Frank,* 105 Mo. App. 384; 79 S. W. 1013; *Connell v. McLaughlin,* 28 Ore. 230; 42 Pac. 218; *Harrisburg Lumber Co. v. Washington,* 29 Ore. 150; 44 Pac. 390. "It is necessary for the person dealing with the agent to show that he was aware of the acts from which the apparent authority is deduced; that he acted in reliance on them and that he did not act negligently but used reasonable means to ascertain whether the power was possessed by the agent."—2 Ency. of Law and Practice, 960.

ALMON & ANDREWS, and KIRK, CARMICHAEL & RATH-ER, for appellee. The following authorities show clearly appellee's right to recovery, on the facts stated.—Clark on Contracts, 25; *McFarland v. Dawson,* 128 Ala. 561; *LaFayette R. R. Co. v. Tucker,* 124 Ala. 515; *Ala. Sec. Co. v. Dewey,* 156 Ala. 539.

SOMERVILLE, J.—In all of its material and decisive aspects this case cannot be distinguished from the case of *Alexander v. Ala. Western R. R. Co.,* 179 Ala. 480, 60 South. 295, recently decided by this court. The principles of law which must here control were there fully discussed and clearly stated. Their application to the facts of this case are fatal to plaintiff's right of recovery, and the trial court should have given for defendant the general affirmative charge as requested.

It cannot be assumed that civil engineers who are supervising the construction of a railroad track are authorized to *make* contracts on behalf of the railroad company because they are superintending the *execution* of such contracts after they have been made.—*Gardner v. B. & M. R. Co.,* 70 Me. 181. Defendant's engineers had no such authority in fact, and there was nothing in defendant's conduct with respect to this employment or service which could estop defendant from denying their authority to bind it by contracts or agreements made by them.—*Patterson v. Neal,* 135 Ala. 477, 33 South. 39.

Nor can a promise to pay plaintiff for the work he did be imputed to defendant by implication of law. Appellee quotes from *McFarland v. Dawson,* 128 Ala. 561, 29 South. 327: "Where, in the absence of an express contract, valuable services are rendered by one person to another, which are knowingly accepted, the law will assume the obligation to pay for such services what

they are reasonably worth." And, again, from Clark on Contracts, p. 25: "If a person allows another to work for him under such circumstances that no reasonable man· would suppose that the latter means to do the work for nothing, he will be liable to pay for it." These are manifestly correct statements of the law, but they have no application to cases where a third person has expressly contracted to do the work in question, and the defendant was not informed that plaintiff was working directly for defendant and looking to him for compensation. Not knowing these conditions, it cannot be said that defendant *knowingly* accepted work done *for him.* This is emphasized in this case by the testimony of plaintiff himself that he never mentioned to any other officer of defendant company his understanding with the several engineers with whom he claims to have dealt, and it does not appear that defendant had the slightest reason for suspecting such an attitude on the part of plaintiff with respect to any of the work done by him. In fact, plaintiff's conduct throughout was sufficient to justify a contrary impression.

It is suggested by counsel for appellee that the evidence of plaintiff's understandings with the several construction engineers of defendant was not intended for the purpose of establishing an express promise on the part of defendant to pay for the work, but only to show defendant's knowledge of the conditions under which it was done, viz., that it was done for defendant with the expectation that defendant would pay plaintiff therefor.

This theory is not sound, for the same reasons and principles of law which deny the agent's power to bind his principal outside of the scope of his employment must equally deny the efficacy of notice to the principal through the knowledge of an agent whose employment does not relate to the matter in question. In other

words, an agent's notice or knowledge is not notice to his principal unless it is with respect to the very matter which the agent is employed to transact for the principal, and unless it comes to him while so engaged. —*Hall & Brown Co. v. Haley Co.*, 174 Ala. 190, 56 South. 726; *Trentor v. Pothen*, 46 Minn. 298, 49 N. W. 129, 24 Am. St. Rep. 225, and note.

To hold on the facts here exhibited that plaintiff can recover of defendant would be to destroy the settled foundations of the law, which rest upon reason as well as upon seasoned authority. We are not informed by anything in this record that defendant has evaded its liability to any of its original contractors, nor are we able to see that such evasion, if shown, could in any way strengthen plaintiff's claim against defendant in this case.

The judgment will be reversed, and the cause remanded for another trial in accordance with the principles above declared.

Reversed and remanded. All the Justices concur, except DOWDELL, C. J., not sitting.