(88 South. 873)
## WOODWARD IRON CO. v. DABNEY.
### (6 Div. 295.)

(Supreme Court of Alabama. April 21, 1921.)

1. Work and labor ⬤⟲17 — One who accepts services rendered by another impliedly liable therefor.

In the absence of an express contract, where valuable services are rendered by one person to another, and are knowingly accepted, the law assumes and implies an obligation to pay for such services what they are reasonably worth; but such rule is not applicable where a third person has expressly contracted to do the work, and the person for whom the work is being done is not informed that the person who does the work is looking to him, and not to third person, for compensation.

2. Physicians and surgeons ⬤⟲24(4)—Whether physician's employment covered services in other and distant plants held for jury.

In an action against a corporation by its physician in a certain city for services rendered in treatment of an employé who had been injured and had received first aid treatment in another town, in which the corporation had a plant, and in which they employed a physician, defended on the ground that such services came within the physician's contract, the question of whether the plaintiff's contract of employment required him to give medical attention only to employés working in city in which such physician was located, or whether it covered services in treatment of employés injured in plants located at other points, held a question for the jury.

3. Physicians and surgeons ⬤⟲24(4)—Whether employer accepted physician's services, knowing that physician looked to employer for compensation, held for jury.

In an action against a corporation, with plants located at different points, by a physician located at one point, for services in treatment of an employé injured in and given first aid treatment at another point, at which the corporation had another physician, the question of whether the corporation accepted such services, knowing that plaintiff physician looked to it for payment, so as to estop it from denying liability for services, held a question for the jury.

4. Physicians and surgeons ⬤⟲24(3)—Custom as to treatment by physician located at one point of defendant's employés injured in plants at other points held competent.

In an action against a corporation, with plants located at different points, by a physician under contract to treat employés at one point, for services in treatment of an employé, who had been injured and had received first aid treatment at another point, at which the cor-

⬤⟲For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

poration had other physicians, involving the question whether plaintiff's contract required him to treat only employés injured in the plant at the point at which he was located, or required him to treat other employés injured in other plants and sent to the hospital at such point for further treatment, testimony as to the custom relating to treatment of employés from plants located at other points *held* competent and relevant.

**5. Appeal and error ⊕⊸231(3)—General objection to evidence insufficient.**

A general objection to admission of testimony is insufficient to warrant consideration thereof on appeal.

Appeal from Circuit Court, Jefferson County; Dan A. Greene, Judge.

Assumpsit by W. C. Dabney against the Woodward Iron Company. Judgment for plaintiff, and defendant appeals. Transferred from Court of Appeals under section 6, p. 449, Acts 1911. Affirmed.

The facts on which the opinion is rested sufficiently appear therefrom.

Nesbit & Sadler, of Birmingham, for appellant.

All contracts are founded upon the actual agreement of the parties. 72 Ala. 493; 65 Ohio St. 104, 61 N. E. 152. Before a principal will be bound by things done at the request of an agent, it must appear that the agent has authority to bind the principal in that matter. 182 Ala. 113, 62 South. 89; 179 Ala. 480, 60 South. 295; 109 Ala. 393, 19 South. 804. If there was no intention or expectation of payment at the time the work was done, there can be no recovery therefor. 2 Labatt, M. & S. 1535; 172 Mass. 398, 52 N. E. 386; 65 Ohio St. 104, 61 N. E. 152; 67 Vt. 393, 31 Atl. 889; 187 Mo. 649, 86 S. W. 150; (Tex. Cr. R.) 20 S. W. 582; (Mo. App.) 202 S. W. 427. By receiving payment for other services on regular employment, without demanding special for a long time, works an estoppel. 27 Neb. 245, 42 N. W. 1034; 69 N. W. 647.

Stokely, Scrivner & Dominick, of Birmingham, for appellee.

Counsel discuss the assignments of error, but without citation of authority.

THOMAS, J. The suit was on common counts for recovery of reasonable compensation for operations performed on employés of defendant. The record contains no pleas. The judgment entry, however, recites that, "issue being joined," there was verdict for plaintiff, etc.

The defendant maintained a medical staff for the treatment of its injured employés at various points of its activities—Bessemer, Dolomite, Vanderbilt, etc.—appellee being the "company physician" at Vanderbilt, and Dr. Naff assistant physician at Dolomite. The employés in question were injured at Dolomite, and treated by the company physicians at that point before they were transferred to Birmingham and came under the treatment of Dr. Dabney, the plaintiff. The contention of defendant that Dr. Dabney was required by the terms of his employment to operate on or treat patients as the occasion required, whether they received injuries at Vanderbilt or elsewhere, was denied by plaintiff, who insisted that his contract of employment with defendant required that he give medical or surgical attention only to those employés working at Vanderbilt, and from whom that company collected a designated sum of money to pay for "medical services" required or desired by such employés.

The evidence shows that plaintiff and Dr. Talley rendered the necessary medical and surgical attention to Matute (an employé of defendant's Dolomite plant, who was injured there), and that this was with the knowledge and consent of defendant. Defendant's executive officers had been advised by its resident physician at Dolomite of the necessity for extraordinary surgical attention to relieve Matute, and this operation and treatment were authorized by such officials, or such authority was a reasonable inference that might have been drawn by the jury from the evidence. Of these facts, Mr. Smith testified that, as assistant secretary for defendant, he had not authorized the payment of a fee to Dr. Dabney for any work he did on Matute or Harrison; that he was consulted about the employment of Dr. Talley to assist Dr. Dabney in the operation of Matute, and authorized the payment of $100 to Dr. Talley; that it was not stated that Dr. Dabney was to make a charge for his services, he being "one of the Vanderbilt company physicians at the time." His explanation of the terms of Dr. Dabney's employment was that at Vanderbilt a sum is paid to its physician, "fixed by the amount of collections" made by the company from the individual employés; while at Dolomite (where Matute and Harrison received their injuries, and received first medical and surgical attention) its physician was paid a fixed salary by defendant for his full time. He further testified, of the extent of defendant's contract with Dr. Dabney, that he—

"was supposed to practice medicine for those men out at Vanderbilt furnace who paid him, and if any of our men employed at Dolomite worked in town that was his jurisdiction. I understood that we had a right to all of his time, if we wanted it. If we needed all of his time, we had a right to it. I say we could send him to Bessemer if we wanted to. There are three mines at Dolomite. There were two at that time; and mines on Red Mountain,

Bessemer, and East Alabama. Dr. Dabney was paid an amount equal to the collections out there at the Woodward Iron Company. The Woodward Iron Company was not out a cent so far as this salary was concerned. * * * I knew about Dr. Dabney treating the Matute case at the time, and the Harrison case later. We certainly did not dispute Dr. Dabney's right to treat these patients on behalf of the Woodward Iron Company. That was what he was hired for. We claimed that it was his duty to treat any of our employés, and we claim that now."

Plaintiff's testimony tended to show that during the five years of his employment by defendant he had not treated other employés of the Woodward Iron Company than those who worked at Vanderbilt furnace and paid for that service as has been indicated, and had never been called on to do so with the exception of the ones in question—operations upon and treatments of Matute and Harrison.

Dr. Naff testified that he was a practicing physician for defendant at its Dolomite mines, and as such turned over to Dr. Dabney the treatment of Matute and Harrison at Birmingham, and discussed those cases with the superior executive officers of defendant company; that he did not inform Mr. Smith or Mr. Bannister (its vice presi dent) that Dr. Dabney was going to make a charge for the services he rendered these men; and as assistant physician at Dolomite he had no authority (on his own initiative) to employ any other doctors for the company at that or other points. On cross-examination the witness stated, of Matute, that after he decided an operation was necessary he dis· cussed the necessity therefor with Mr. Ban nister, mentioning Drs. Davis and Dabney in connection with the operation, and that Mr. Bannister stated he was not willing to pay a large sum for the service, as "$1,000"; and it was understood that he had authority from Mr. Bannister to employ "somebody else" at a reasonable price to assist or ren der the necessary medical and surgical aid to Matute. A jury question was presented as to the company's liability for the medical and surgical treatment of Matute by Dr. Dabney.

Dr. Naff made no statement of the cir· cumstances under which he delivered Harri· son to the Birmingham hospital. Dr. Dabney testified that it was only after he was au· thorized by Dr. Naff to proceed with the treatment of Harrison that he attended him during the latter's stay in the hospital. The liability of defendant for a reasonable amount for the service of Dr. Dabney in the treatment of the company's employé (Harrison) must depend, not only upon whether plaintiff's employment by the de· fendant company at Vanderbilt furnace re· quired him to treat subjects brought from its other plants to Birmingham, but upon the fact of authority of the company's agent to so transfer them for treatment or upon the circumstances being such as to estop the company to deny liability after such pro· fessional services. were rendered. Having held out Dr. Naff as the company's agent to transfer an injured employé (Matute) to the Birmingham hospital and place his opera· tion and treatment in the hands of Drs. Dabney and Talley ,was a declaration or rat· ification of the authority of Dr. Naff to transfer a patient from Dolomite to Birming· ham for medical or surgical attention that could not be given at Dolomite, and of the transfer of Harrison from the point where he received first aid to the hospital in Birm· ingham. The evidence is without dispute that Dr. Dabney "was first called to treat Mr. Harrison by the hospital authorities," saying that a "patient had been sent out by the Woodward Iron Company" with the re· quest that he "be notified . that the patient was there and to take charge of the case"; that in response to this request plaintiff went to the hospital, found its resident physi· cian from Dolomite (Dr. Naff) there as· the agent or official of the company giving charge of the patient to the hospital and to Dr. Dabney, who ministered to and treated him until his recovery and discharge from the hospital. If defendant was in duty bound to extend medical and surgical aid to Har· rison before and after his removal from Do· lomite, it could not terminate or discharge that duty by his delivery to the Birmingham hospital through its agent and resident phy· sician at Dolomite. Dr. Naff, as its physician having the patient in charge, was its agent in his transfer from the point of first treat· ment to the hospital; and, by the same tok· en, the care of this employé was transferred from Dr. Naff to Dr. Dabney. The duty, if it existed, of .other and further surgical or medical attention to Harrison still lay upon. defendant, who was discharging the same through Dabney to the injured employé. Therefore the liability of defendant to Dr. Dabney .was dependent upon the extent ,of the company's contract with him as its physician and surgeon at its Vanderbilt fur· nace, whether this extended to the care and treatment of its employés in Birmingham hospitals who were not injured or sickened at Vanderbilt furnace, but at other points of its corporate activities.

[1] In the absence of an express contract, where valuable services are rendered by one person to another, which are knowingly ac· cepted, the law assumes and implies an ob· ligation to pay for such services what they are reasonably worth. McFarland v. Daw· son, 128 Ala. 561, 29 South. 327; Farrell v. Betts, 16 Ala. App. 668, 670, 81 South. 188.

"If a person allows another to work for him under such circumstances that no reasonable man would suppose that the latter means to

do the work for nothing, he will be liable to pay for it." Clark on Contracts, p. 25.

These are correct statements of law, having no application to cases where a third person has expressly contracted to do the work in question and "the defendant was not informed that plaintiff was working directly for defendant and looking to him for compensation." In the absence of such knowledge or conditions, it cannot be said that a defendant knowingly accepted work done for him, and for which he must make a reasonable compensation. These are applicable if the defendant is informed that he is looked to for payment and under such condition and knowledge receives the benefit. Ala. West. R. R. Co. v. Bush, 182 Ala. 113, 62 South. 89.

[2, 3] In the matter of liability for the reasonable worth of the professional services rendered Harrison, there was evidence showing original authority on the part of Dr. Naff to care for him as the company's physician at Dolomite; and so far as concerned Dr. Dabney this was a question for the jury. In the matter of liability for the professional service rendered Harrison while in the Birmingham hospital, made with apparent authority, and whether binding the defendant by way of estoppel, this was also a question for the jury, dependent upon the extent of the company's contract with Dr. Dabney as its physician at Vanderbilt furnace. Alexander v. Ala. West. R. R. Co., 179 Ala. 480, 60 South. 295. That company having held out Dr. Naff to Dr. Dabney as having authority to transfer a patient from Bessemer or Dolomite to the Birmingham hospital and commit him to the treatment and care of Dr. Dabney (as was done in Matute's case) was a tendency of evidence from which a reasonable inference may be drawn of authority to transfer Harrison, and of liability to pay for such services, dependent upon the extent of the company's contract with Dr. Dabney for services to be rendered as its physician at Vanderbilt furnace.

This controverted question of fact was to be answered by the verdict of the jury, from the reasonable inferences of which the evidence was susceptible. And the court, on this phase of the case, properly charged the jury, at the request of the plaintiff in writing, that—

"The plaintiff discharged the burden on him when he showed to the reasonable satisfaction of the jury from the evidence that he treated the defendant's employés at its request, and was under no legal obligation to treat them without additional charge and did not agree to do so, if you [the jury] are so reasonably satisfied from the evidence he has shown this."

The several requested and refused charges in writing by defendant were either erroneous or confusing, and a detailed treatment of the same is not deemed to be necessary.

We have examined the motion for a new trial, and are of opinion that the trial court committed no error in denying the same.

Plaintiff having rested his case, defendant examined as a witness Dr. Daley, who, testifying that he knew Dr. Dabney at the time he (Dr. Daley) referred Matute to Dr. Dabney, was asked by defendant, "At that time did you know of Dr. Dabney's connection with the Woodward Iron Company?" and answered "Yes; that was the reason I sent him to Dr. Dabney." On cross-examination the witness testified that he knew the men at Vanderbilt furnace only paid a fixed or limited sum "for their treatment, and these men themselves paid it in to the company, and the company paid it to the doctor," and that he "knew that was the arrangement." Thereupon witness was asked by plaintiff's counsel, "And you knew at that time that the doctor at Vanderbilt did not treat patients elsewhere," and was permitted to answer, over the objection and exception of the defendant, and its assignment that the question called "for immaterial testimony":

"I knew at that time that the doctor out there treated only those patients. I have practiced out there, and I have done this same class of practice for Vanderbilt furnace."

The witness was further asked by plaintiff's counsel to "state to the jury whether it is customary for the company to send in patients from other mines, to treat them for nothing during the time you were out there," to which he answered:

"We were always paid extra for men sent in from other places. It is customary for them to send them to us, and we were paid extra for that."

[4, 5] Defendant's objection to this was general, and upon the overruling of same, "defendant's counsel then and there duly and legally reserved an exception," and no motion was made to exclude the answer. The question and answer directed to the custom prevailing at Vanderbilt furnace at the time of the treatment of Matute and Harrison as relating to treatment of men from other of the company's plants was competent and relevant. The relevancy of the question and answer, as to the former custom prevailing at Vanderbilt furnace of treatment of patients from other of defendant's mines, was not properly reserved and presented no ruling for review. Burnett & Bean, v. Miller, ante, p. 606, 88 South. 871.

The judgment of the circuit court is affirmed.

Affirmed.

ANDERSON, C. J., and GARDNER and MILLER, JJ., concur.