## WILLIAM BOND *v.* S. W. FROST et al.

Where the bill of lading shows the goods to have been shipped in good order, this acknowledgment, if it be susceptible of explanation, throws the burden of proof on the vessel when the goods are not delivered in good order.

A cotton pickery retained the damaged cotton picked off the bales for its own account, upon the ground that it was customary so to do. *Held:* That the case should be remanded for further investigation as to this custom.

APPEAL from the Fifth District Court of New Orleans, *Buchanan,* J. *William C. Hamner,* for plaintiff. *P. E. Bonford,* for defendants. The judgment of the court was pronounced by

SLIDELL, J. This is a suit for damages alleged to have been sustained by the plaintiff on a lot of cotton. The steamboat Naomi received the cotton in the Hatchee river, and undertook, by her bill of lading, to deliver it at New Orleans to *Felix Walker & Co.,* the plaintiff's factors, "they paying freight at two dol-

lars per bale, and charges, with privilege of re-shipping." The Concordia received the cotton from the Naomi at Memphis, and gave a bill of lading, in which the cotton is receipted for as in good order and condition. The bill stipulates freight from Memphis to New Orleans, at one dollar per bale, the consignees to pay, also, a sum of $106 87, amount of freight and charges advanced by the Concordia to the Naomi. Upon the arrival of the cotton at New Orleans, it was found that fifty bales were damaged by water. The consignees refused to pay the defendants their bill of freight and charges, but received the cotton, with the exception of five bales, which the defendants retained to reimburse themselves, and subsequently sold without the plaintiff's consent. The bill of items annexed to the plaintiff's petition is composed of charges for the five bales short, loss of weight incurred by picking the fifty damaged bales, cost of picking, surveying, &c.

There was judgment for the plaintiff in the court below, for the whole amount claimed, and the defendants have appealed.

The damaged bales were wet on one side only, and this from two to four inches deep. They must have lain partially in water, either on board the Concordia or the Naomi, or on the river bank before shipment. The damage was of such a nature as would not "dry out," and rendered picking necessary. The principal contest between the parties is, whether this damage was incurred before or after the shipment on board the Concordia.

The Concordia's bill of lading acknowledged the cotton to be in good order and condition when received by her. It is said this receipt is not conclusive against the vessel. If it be admitted that it is open to explanation, still, it is certain that the receipt throws the burden of proof upon the vessel, and that its recital cannot be overthrown or qualified, except by evidence of a very clear and convincing character. The policy of the law, a policy justified by long experience, is to hold the carrier to a very strict accountability. The recital of the bill of lading is not to be weakened by a conjectural showing.

We have carefully considered the conflicting testimony upon which the cause is presented, and concur with the district judge in the opinion, that the evidence preponderates in favor of the plaintiff. We think that the damage was a recent one; and the proposition that it occurred before the Concordia received it, rests upon a basis too loose and conjectural to warrant us in disturbing the opinion of the district judge upon the question of fact. The defendants have not furnished any direct evidence as to how long, and under what circumstances, the cotton lay on the river bank before shipment; and the speculative opinions of persons who saw the cotton after it was landed here, are conflicting. .

It was said, in argument, that in the navigation of the Mississippi and its tributaries, cotton is usually carried on deck, and it being necessarily exposed, the presumption should be, when it arrives damaged by water, that such damage arose from the manner of transportation, rather than the fault of the carrier. We have no evidence before us which would authorize us to say that the damage was the necessary consequence of a mode of transportation to which the shipper assented.

In assessing the damages, there was a charge allowed which, upon the evidence before us, we are not prepared to sanction. In the plaintiff's bill of damages, there is an item for loss of weight by picking, amounting to 1713 pounds, for which defendants are charged $205 56. The cotton-picker testifies, that he kept the cotton picked from the damaged bales, dried it, sold it, and got the money for it; that he charges so much a bale for picking, without reference

to the damaged cotton, which he keeps. On re-examination, he stated that the damaged portion is considered part of the price for picking. The defendants are charged $50 for picking the cotton, and if they are to pay the sound value of the portion damaged, it seems to us, as at present advised, unreasonable that its proceeds should not be allowed for. At all events, we think the defendants do not complain without reason, that the data furnished by the plaintiff are an unsatisfactory basis for the assessment of damages. As to the amount picked, we have the naked fact that the picker, whose interest it is, say the defendants, to make the picking as large as possible, has picked a certain number of pounds, which the defendants are held for at its sound value. It is not expressly proved by the picker himself, nor any one else, that the whole amount picked was necessarily taken out of the bales as damaged, nor are we informed what was the value of the pickings. The amount in this case is not large, but it involves the justice and reasonableness of a practice, the propriety of which we have hitherto had occasion to question. We think this branch of the case, upon which the evidence is meager and unsatisfactory, should undergo further investigation.

Judgment reversed, and the cause remanded for a new trial. Plaintiff to pay costs of appeal.