### No. 2512

### Second Circuit

## J. L. CALHOUN v. AMERICAN RAILWAY EXPRESS COMPANY, INC.

(December 1, 1925, Opinion and Decree)
(February 8, 1926, Rehearing Refused)

*(Syllabus by the Editor)*

1. **Louisiana Digest—Carriers of Passengers and Goods—Par. 135.**

After a carrier has issued a receipt showing that the goods were in good condition at the time they were received, the burden of proof is on the defendant to show that the damage to the shipment was not caused by its fault or negligence. It is not sufficient that the defendant creates a doubt on the subject; it should make the matter clear.

(Civil Code, Art. 2754. Editor's note.)

Appeal from Seventh Judicial District Court of Louisiana, parish of Concordia. Hon. R. M. Taliferro, Judge.

This is a suit for damages to a shipment of furs caused by the negligence of the carrier.

There was judgment for defendant and plaintiff appealed.

Judgment reversed.

Dale, Young & Dale, of Vidalia, attorneys for plaintiff, appellant.

G. P. Bullis, of Vidalia, attorney for defendant, appellee.

ODOM, J. Plaintiff brings this suit against the defendant to recover $763.50 alleged to be due him for account of damage to a shipment of furs caused by defendant's negligence in allowing said furs to become wet in transit between Jonesville, Louisiana, the place of shipment, and Ferriday, Louisiana, the place of delivery.

He alleges that the furs were delivered to the defendant at Jonesville in good condition and that defendant issued its uniform receipt therefor, and that when said shipment arrived at the place of delivery the furs were wet and had become heated, that the fur was slipping from the skins, and that the whole shipment was in such a condition that he lost the above stated sum.

Defendant, in answer, admitted the receipt of the shipment at Jonesville and the issuance of its receipt therefor showing that the furs were then in good order; but it sets up that as a matter of fact they were not in good condition and that they were wet and that the receipt was issued in error of fact and that the damage to the furs was due to no fault of its own, and especially alleges:

"That the damage to said furs was not caused either in whole or in part by its negligence, or that of its agents, but was caused by the act or default of the shipper, or the nature of the property, or defect or inherent vice therein, or improper or insufficient packing, and that defendant is in no wise liable to plaintiff on account of said loss."

There was judgment in the district court rejecting plaintiff's demand, from which judgment he has appealed.

### OPINION

Admittedly only questions of fact are before this court for determination.

Plaintiff contends that the damage was caused by defendant's negligence in allowing the furs to become wet while in transit; but defendant denies this and sets up that the furs were in a wet, bad condition when received.

It is asserted by counsel for plaintiff and admitted by counsel for defendant that the issuance of the defendant's receipt makes a prima facie showing that the goods were received in good condition. This presumption is, of course, subject to rebuttal.

Article 2754 of the Civil Code provides:

"Carriers and watermen are liable for the loss or damage of the things entrusted to their care, unless they can prove that such loss or damage has been occasioned by accidental and uncontrollable events."

Having issued a receipt for the goods in this case showing that they were in good condition when received, the burden, therefore, was upon defendant to show that the damage to the furs, if any, was not due to its fault or negligence.

Kimball & Lilly vs. Brander, 6 La. 711.

Bond vs. Frost, 6 La. Ann. 801.

Ship Rappahannock vs. Woodruff, 11 La. Ann. 698.

Webre vs. H. Kendall Carter, 12 La. Ann. 446.

Lehman, Stern & Co. vs. Morgan's L. & T. R. R. & S. S. Co., 115 La. 1, 38 South. 873.

National Rice Milling Co. vs. N. O. & N. E. R. R. Co., 132 La. 615, 61 South. 708.

Our learned brother of the district court, after reviewing the testimony, concludes his written opinion thus:

"It is our conclusion that the evidence in this case clearly preponderates in favor of the defendant and establishes with legal certainty that the damage to the hides in question was not occasioned by, nor while in the possession of, the defendant."

And he rejected the plaintiff's demand.

However much we dislike to set aside the judgment of the district court based on questions of fact, yet the conclusion which we have reached after carefully reading and considering all the testimony forces us to do so.

Mr. Tiffey, sworn for the plaintiff, testified that he personally packed the hides before shipment; that he purchased about one half of them, and had personal supervision of the drying and preparing of all of them for shipment.

He says that he stretched them and hung them up in a drying shed or house on wires where they remained for several days, and that while he did not purchase more than one-half of them he personally inspected all of them, and that when packed for shipment they were dry and in good condition.

He testified that he personally inspected and sacked all of them and carried them to the station.

When the sacks were delivered to the agent of the Express Company at Jonesville the agent inspected them and saw that they were not of the kind which he was authorized to receive, and ordered Tiffey to get other sacks, which he did.

After procuring the new sacks, one of the sacks which contained furs was emptied on the floor in the presence of Tiffey, the express company's agent, and one other person, and resacked.

These hides, Tiffey said, were in good condition.

The other sacks were not emptied, but the old sacks with the skins inside were placed in the new sacks.

The testimony is that all of the sacks were dry and in good condition.

Mr. Ledford, defendant's agent at Jonesville, corroborated Mr. Tiffey's testimony to the extent that he ordered the new

sacks on account of the defective old ones and that he saw but one sack emptied and repacked. He says the hides looked all right, and that while they might have been wet at the time, there were no outward indications that they were, and, in fact, they looked to be dry and looked to be in good condition. He did not order the new sacks because the old sacks were wet but because the old ones were oat sacks and some fur was showing on the outside.

Mr. O. J. Mixon, express messenger on the train, who handled the shipment while in transit, testified that there was no indication that the sacks were wet when received.

If the testimony of Tiffey stood in the record uncorroborated, it might be said that he was an interested witness because of the fact that he had sold a portion of these furs to the plaintiff and his testimony was challenged for that reason; but his testimony that the hides were dry and in good condition is corroborated by that of the agent, Ledford, who received them at Jonesville, and that of Mixon, the express messenger, both witnesses for the defendant.

As already recited, the express receipt itself makes a prima facie showing that the packages were in good condition when received. But, in addition to that, it is shown that the agent, Ledford, personally inspected the packages, and he says that they were in apparently good condition. Therefore it cannot be said that the express receipt was issued in error of fact. It is true that the agent did not unpack more than one of the sacks but he did see the others and testified that they appeared to be dry.

It must be borne in mind that the burden of plaintiff's complaint is that the defendant allowed the shipment to get wet, and for that reason the hides and the fur were injured; and while Ledford, the agent, was not in position to testify as to the condition of the hides in the sacks which he did not open, he was in position to know and did know whether the sacks were wet, and he said they were not. Not only did he see one sack unpacked and repacked and the others resacked, but he personally assisted in the process.

We think, therefore, the conclusion is irresistible that the sacks were dry at least when received.

How the undisputed facts are that on the following day when the sacks and hides were inspected at Vidalia by the plaintiff, Calhoun, the agent of the express company, and others, they were wet.

The testimony of both Calhoun and the agent and of the other witnesses is that they were "wringing wet" and that water was dripping from them.

Then the question naturally arises, when, where and how did they get wet?

In view of the testimony of Tiffey and of Ledford, the agent, at Jonesville, and of Mixon, the express messenger, all to the effect that they were in good condition when received, we think there is no escape from the conclusion that they got wet while in the possession of the defendant company.

It is true that all the witnesses of the defendant say they did not get wet while in its possession, but, as stated, the question naturally arises, when did they get wet?

The testimony of defendant's witnesses is that at the time they were loaded at Jonesville it was "misting rain", but Mixon says that there was a very "light shower".

The testimony shows that at the time the shipment reached Vidalia it was raining some, a mist or light shower, but it rained heavily that night and was "pouring down" the next morning, so much so that the shipment was not forwarded to

Ferriday on the first train out of Vidalia, and when the goods were inspected later in the day they were very wet.

It is defendant's contention that the skins were probably not well-cured and that when packed the moisture in them caused them to spoil. It is possible, of course, that there was some moisture in the hides when packed, but it is impossible for them to have contained the amount of water that was found in them later.

The testimony shows that when the hides were inspected at Vidalia they were hot; one witness testifying that they were so hot he could not bear to rest his hand upon them, and all the witnesses saying that the fur was slipping from them and that the shipment was badly damaged on that account.

The testimony makes it clear also that moisture in hides will cause them to heat and the fur to slip. In other words, produce the very condition which was found to exist. That point is not disputed.

Our conclusion is that the hides were in some way allowed to get wet while in the defendant's possession and that the damage was caused in that way.

Defendant took the testimony of Mr. M. Krouse, Benjamin Grishman, Robert C. Harmon and Harry Abraham by commission.

These are all dealers in furs. Their testimony is to the effect that if hides are allowed to get wet they will heat and become damaged. The following hypothetical question was propounded to each of them:

"Assuming that such hides were properly cured before being shipped, and they were received at Jonesville, La., at about 4:30 P. M. on December 21, 1923, by the express agent, and were kept in the express room at that place until 5 o'clock the same evening, and were then taken direct through a light rain to the L. & A. Railway express car, a distance of 30 to 40 feet, and were transported in the express car on said road to Vidalia, La., a distance of about 28 miles, where they arrived at 6.15 P. M., and that they were not exposed to rain during transit, and on arrival were immediately carried by a man, without being placed on the ground, to the express room in Vidalia, a distance of not more than 30 or 40 feet, through a light rain, and such hides should remain in the express room at Vidalia until 9 or 10 o'clock the next morning, the total time being not more than 17 or 18 hours, could such hides spoil to such an extent that the hair or fur would slip easily from the hides by pulling it with the hands? What, in your opinion, caused same?"

The witness Grishman testified that under those assumed conditions the hides could not have been in the condition described. He says that they must have been packed five or six days before being shipped.

The witness Abraham testified that the condition of the hides in his opinion was brought about by the packing of them while green and uncured, and he says that if the hides had been unpacked after eighteen hours of rain they would not have been wormy or heated.

The witness, Hammon, said, in answer to that question:

"The hides would not spoil to the extent described unless they had not been properly cured or got wet in transit."

And further:

"If they were fly-blown before they were packed and were not properly cured before packing, they would heat and slip, and also if they had gotten wet in transit."

He further testified that, in his opinion, "they would not slip within forty-eight hours".

On the contrary, the other witness, Mr. Krouse, whose testimony was taken by de-

fendant, said, in answer to interrogatory No. 12 above quoted:

"If carried through a light rain the top hides would have been spoiled, but all the hides would not have been spoiled; but if hides were packed in heavy sacks I do not think any would have become spoiled."

And he further testified in answer to other interrogatories as follows:

"The top hides would get a chance to get heated, but I don't think it would cause them to contain worms within that time. If packed in heavy sacks the top hides would become heated.

"The hides that got wet could have started pulling from the rain. If the hides were packed green and uncured they would have spoiled in transit.

"The top hides and those nearest to exposure would be spoiled.

"If hides were properly cured and well-packed, hides could not have spoiled except from a rain. In my opinion, hides could have gone spoiled by being wet or packed while green."

Plaintiff and his witnesses testify that they are experienced fur dealers and say that hides will heat and the fur slip within a few hours after getting wet; one of the witnesses saying within six hours and both witnesses saying within the time the shipment was in transit.

There is some testimony that worms were coming out of some of the sacks when inspected at Vidalia, but plaintiff says there were only a very few seen, and his testimony on that point is not disputed.

It is possible that the worms were deposited by the fly in the dry hides and that the moisture caused or enabled them to grow and make themselves manifest.

The testimony as to the length of time in which hides would spoil after becoming wet is conflicting; that of the plaintiff being to the effect that they would spoil within the time they were in defendant's possession, and that of the defendant preponderating to the effect that they would not spoil and become damaged within that length of time.

Having issued its receipt showing that the goods were in good condition at the time they were received, the burden was on the defendant to show that the damage to the shipment was not caused by its negligence. It is not sufficient that it creates a doubt on the subject; it should have made it clear.

Bond vs. Frost, 8 La. Ann. 297.

The defendant, in our opinion, has failed to discharge that burden. We think that the plaintiff made out his case as to the amount of damage.

For the reasons assigned, it is therefore ordered, adjudged and decreed that the plaintiff, J. L. Calhoun, do have judgment against and recover from the defendant, the American Railway Express Company, Inc., the full sum and amount of $763.50 with legal interest thereon from judicial demand, and all costs of both courts.