## Mary Bothman, Appellee, v. County of Jackson, Appellant.

Assumpsit, § 44*—*when money wrongfully obtained by one person may be recovered from another.* Where a county clerk issued illegal orders in his own favor and sold them to the plaintiff, and from time to time accounted to the county for a portion of them and paid it money to protect them, and when his wrongful conduct was discovered and further payment of orders stopped, the county had $2,760 more than it had previously paid out on such orders, *held* that the plaintiff could not recover such fund from the county in an action of assumpsit, where it did not appear that it was made up of money obtained by the clerk from the plaintiff.

Appeal from the Circuit Court of Jackson county; the Hon. A. W. Lewis, Judge, presiding. Heard in this court at the October term, 1914. Reversed and remanded. Opinion filed July 21, 1915.

W. A. Schwartz, W. F. Ellis and C. E. Feirich, for appellant.

I. K. Levy, Martin & Glenn and John M. Herbert, for appellee.

Mr. Presiding Justice McBride delivered the opinion of the court.

The appellee recovered a judgment in the court below for $1,381.35, which she claims that appellant held for her use. The declaration consisted of the common counts, but the claim was based upon the count for money had and received for the use of plaintiff.

It appears from the record in this case that James W. Brown was county clerk of Jackson county, and that during the years 1912 and 1913 issued warrants payable to himself as clerk, for fees, which purported to be authorized by the board of supervisors, to a total amount of $11,110, and sold the same to the plaintiff, the City National Bank of Murphysboro, the First National Bank of Murphysboro and Sarah Landau;

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

that he sold to appellee fourteen of these orders or warrants ranging in sums from $100 up to $1,000, and aggregating the total of $4,845. It further appears from the evidence that from time to time Brown in his settlements with the county charged himself with a portion of these orders, amounting to a total of $5,085. It appears that at stated times during this period he had settlements with the county charging himself with the income of the office and crediting the expenditures paid, and in these settlements he accounted for these illegal warrants to the amount above specified, and then paid the balance that was found to be due the county upon said settlement to the treasurer without making any suggestions as to the source from which the money came or directions what to do with the money. It appears further that these warrants were not charged up in these different settlements in any regular manner, or even at the next settlement after the warrant was issued; some of them were not accounted for for many months after having been issued. It appears that of this $11,110, warrants issued, that the county paid three of said warrants amounting in the aggregate to $2,325, and that Brown had paid into the county treasury, in the manner above stated, $2,760 more than he was owing to the county. This arose from the fact that before the remaining orders were presented to the treasurer it had been discovered that Brown was issuing fraudulent orders and the treasurer refused payment, and resulted, according to the computation of counsel, in a balance of $2,760 that had been overpaid by Brown to the county (not taking into consideration the spurious warrants that had been issued and not paid by the county).

The suit was brought for the purpose of recovering appellee's proportion of this $2,760, and at the conclusion of the evidence it was stipulated between appellee, the City National Bank of Murphysboro, the First National Bank of Murphysboro and Sarah Landau

(the last three named persons not being parties to this suit), that the said $2,760, should be apportioned among them respectively in proportion to the amount said purported county orders held by each of them bears to the respective amounts paid into the county treasury by said Brown, except that it was agreed that Sarah Landau was not entitled to any part of such fund. This agreement was objected to by appellant and was not in any manner consented to by it and, as we view it, is in no way binding upon the appellant.

It is further stipulated that all of said warrants were issued by the clerk without authority of law and were illegal and void.

The only question that we feel called upon to decide in this case is as to whether or not under these circumstances an action would lie by appellee to recover from appellant, for money had and received, the proportion above stipulated or any portion of such fund. It is contended by counsel for appellee that this money equitably belongs to appellee and that she has the right to recover the same from the county under the common counts, and cites many authorities in support of this contention which hold that where money is held by one person that belongs to another that this action may be sustained, and that where duty requires the payment that the action may be sustained. With this principle of law we concur, but the question arises is this case within that principle and within that class of cases that have been recognized by our courts as giving a right of action where no privity exists? We are cited to the case of *Board of Highway Comr's. v. City of Bloomington*, 253 Ill. 164, where the city had collected a road and bridge tax that ought to have been paid to the highway commissioners, and there the court says the liability exists from the implication of law that arises from the facts and circumstances, independent of agreement and presumed intention, and the opinion contains many other cases illustrative of the doctrine

announced; but as we view it, and as we view the cases referred to, there was at all times something in the circumstances of the case that gave identity to the fund, that is, that it was a tax fund, or in one case it was a fund that had been paid by mistake, and others where the fund had been illegally paid to the party being sued, and there was something to identify or make certain the amount due the party that was claiming the fund. Is that true in this case? Here the money was paid by appellee to Brown from time to time and was never paid by him directly into the treasury of the county but was used by him in the settlement of his accounts and then he paid the balance into the county treasury. This balance may have been made up by this fund in part, or by other moneys secured from other persons and placed in the treasury as a general fund, or amounts due the county, and nothing to designate that it was placed in the treasury for the purpose of redeeming these warrants, as claimed by counsel for appellee. Brown in his testimony says, on cross-examination: ''I did not negotiate one of these instruments to Mrs. Bothman and then carry the money direct to the county treasurer to redeem that particular order; did not do any of them that way; the money I paid the county to make up what I owed the county by my reports came from various warrants. I did not pay any money into the treasury to pay any specific order. A number of these orders were taken into each semiannual report. The orders were not put on this record at the time they were issued; usually these warrants were entered at the end of the term. I negotiated these purported orders and then at some later date put them on my record, as we took them in at the end of the term. When I made up my report to the county board I did not include all of the orders that were drawn up to that date.'' It may be true as claimed by counsel that here is an amount of $2,760 due to Brown, but there is nothing in it or in the evi-

dence to show that any particular part of it belongs to appellee or any particular part to any other person; while Brown does not claim it, nevertheless it remains there as a credit to Brown and must, in our judgment, be reached in some manner through Brown. It is a fund arising originally from a contribution to Brown from different sources. The appellant is not shown by the evidence to have been the agent of the appellee in the receipt of the money or to have fraudulently acquired the money, and this being so the appellant is responsible only to its principals for its disposition, and we do not think that it can be said that this money actually belonged to appellee, and before the defendant can be held liable to the plaintiffs for money had and received to their use, it should appear there was money in his hands actually belonging to him. *Maxwell v. Longenecker,* 82 Ill. 308. This was a case where a fund had been placed in the defendant's hands to be paid out for work and materials on Maxwell's building, without any specific directions as to whom or how much should be paid to the respective parties being given, and the Supreme Court held that persons interested in this fund, or that had performed work upon this building and entitled to their pay, could not bring an action to recover for money had and received, and we think the case is decisive of the one at bar.

It may be that in a court of equity these fraudulent orders might be considered in equity as an assignment of any benefit that Brown had received through the use of the money obtained upon such warrants, and that in an equitable action to which all persons presently or prospectively interested were made parties the fund might be disposed of according to their equities, but we do not believe that appellee and the other persons who may or may not have contributed to the creation of this particular fund could say that we apportion this fund among ourselves according to the

amount of money that we have paid Brown and take judgment against the county for these amounts without its consent. We believe the court erred in rendering judgment against the appellant, and the judgment of the lower court is reversed and the cause remanded.

*Reversed and remanded.*