118

(No. 1677—)

CHARLES J. KRAFT, Claimant vs. STATE OF ILLINOIS, Respondent.

*Opinion filed June 19, 1934.*
*Rehearing denied, March 12, 1935.*

BECKMAN, OLSON, HOUGH & WOODS, for claimant.

OTTO KERNER, Attorney General; CARL DIETZ, Assistant Attorney General, for respondent.

MR. JUSTICE LINSCOTT delivered the opinion of the court:

The petitioner filed his claim with the clerk of the court on November 12, 1930, alleging that the State of Illinois is indebted to him in the sum of Ten Thousand Nine Hundred Thirty-five Dollars and Seventy-nine Cents ($10,935.79) for money paid and expended by him for the use of the State of Illinois. He avers that during the years of 1923 to 1928 inclusive, he was a Colonel of the 202nd Coast Artillery of the Illinois National Guard, commanding the Regiment, and that as such officer he found it necessary, in order to protect the properties of the State of Illinois and to carry on the work of the regiment, to purchase from time to time, certain goods, wares, merchandise, supplies and equipment for the enlisted men of the regiment and for a certain Armory

belonging to the State of Illinois, located at the southeast corner of Thorndale Avenue and Broadway in the City of Chicago and known as the Broadway Armory. He also avers that the above mentioned sum of money was paid by him from his own funds and/or funds to which he was lawfully entitled in making the purchases, and that all of said purchases were for Armory supplies and equipment with the exception of Three Hundred Fourteen Dollars and Sixty Cents ($314.60) which was expended for supplies for the enlisted men in the regiment.

The petitioner also avers that it was absolutely impossible to carry on efficiently the work of said regiment and/or to protect the properties and interests of the State of Illinois without purchasing said goods, etc.; that the said State of Illinois has accepted and enjoyed the benefit of such purchases, and is, therefore, liable for the reimbursement to your petitioner; and the bill of particulars is attached to the complaint.

On December 20, 1930, an amended petition or declaration was filed, substantially the same as the first one, but the bill of particulars attached thereto is for the sum of Ten Thousand Nine Hundred Sixty-one Dollars and Forty-nine Cents ($10,961.49). There is one, however, noticeable exception. It is averred in this amended petition that the sums of money claimed by the petitioner had all been paid by him from his own funds, and/or funds to which he was lawfully entitled, and that all of the purchases were for the said Armory with the exception of Nine Hundred Eleven Dollars and Sixty-four Cents ($911.64) which was expended for supplies for the enlisted men in said regiment. The bill of particulars contains numerous items and supplies of one kind or another, and we are at a loss to know just what this means, and because of such uncertainty, we cannot consider it, and we do not find that there is anything in the evidence to throw light upon this proposition.

On January 30, 1934, by leave of court, an amendment was filed to the amended petition. This fixes the damages at the sum of Fifteen Thousand Three Hundred Thirty-four Dollars and Eighty-six Cents ($15,334.86), which was arrived at by figuring five (5) per cent. interest for each calendar year for the sum mentioned in the amended declaration,

which amounted to Four Thousand Three Hundred Seventy-three Dollars and Thirty-seven Cents ($4,373.37).

To support these contentions, the claimant filed his deposition which was taken January 27, 1931, and thereafter introduced oral argument. It appears from the evidence that claimant had been a resident of the City of Chicago for quite a period of years and was on that date, 49 years old. His military experience consisted of a few months over thirty-one years of continuous service, that is, in the Federal and State service. During that period he had received a Certificate of Merit which was a recognition similar to a War Cross, issued during the late war. He had served in various insurrections in Central America; in Nicaragua, and the Panama Revolution in 1911; went to the border in 1916 and to France in 1917, and stayed there until sometime during the year 1919. He was discharged from the World War with the rank of captain; had been wounded during his military service, seven times, twice in the World War. When he returned from the World War, he helped organize the American Legion for about two years. He testified that he organized about thirty-eight posts that are still existing in Cook County and in 1921 started organizing the present 202nd Coast Artillery, and was made Colonel of that regiment in 1923, it being a regiment of National Guard Troops.

The following appears on page 5 of his deposition:

"Q. And you resigned when?

A. Resigned March 24, 1930.

Q. That was following the Board of Inquiry, or Efficiency Board?

A. Yes."

Just what this had to do with the questions involved here, has been left unexplained. Later on he was asked:

"Q. During your time with the Marine Corps or in the Federal service during the World War were you ever charged with any withholding of funds or anything of that kind?

A. No, never reprimanded in my life by a superior officer.

Q. You were honorably discharged, and other than this Board of Inquiry your service has been without any question, is that right?

A. Always has."

Just what the Board of Inquiry had to do with the resignation of the claimant is still a matter of doubt and conjecture.

It appears from his evidence that he received a salary of $175.00 per month from the State, up and until January 1, 1927 when he resigned as custodian of the Armory. Proof is submitted that he applied this monthly salary to the Armory in making improvements therein and bettering the conditions. It is also shown that there were four different funds from which money was drawn for the military service, either by way of improvement to the armory or pay to the men. One was the Armory Rental Fund, which is derived from the armory sub-rentals to civilian organizations; two: the State fund, appropriated by the State to the Adjutant General's Department; three: the National Guard Commission Fund, made up of donations from patriotic citizens; four: the Federal appropriation to the National Guard.

This court has not been supplied with an itemized statement of these funds, but it appears that the claimant also bought a number of circus seats for the armory and received rentals therefrom; that the Armory was rented for $100.00 per night for wrestling matches and $50.00 per night for basketball games, and there were other miscellaneous charges for rental.

It appears from the evidence that the claimant did expend large sums of money for the use and benefit of his regiment, particularly the Armory, but the court is at a loss to know why he resigned in the face of what we are led to believe was to be a military investigation of his activities. Nothing further appears from the record except that which would glorify an honorable patriotic record. That this claimant was led to believe that he would be reimbursed for these expenditures, appears from his testimony and an affidavit of Colonel Inglesh. An affidavit was filed with this court on June 13, 1934 from one Jules F. Cornelius to the effect that in 1925, a committee of business men was organized for the purpose of appearing at Springfield to set forth the merits and desirability of the Broadway Armory, and that he, Jules F. Cornelius, was chairman of that committee, which consisted of approximately twenty-five business men, and during that time was frequently in contact with Colonel Kraft; that in 1925, he and Colonel Kraft appeared at Springfield and

went before the then Governor and Colonel Inglesh and before the Chairman of the Appropriation Committee of each the Senate and the House and before the Committees Proper, and presented at that time the desirability of the purchase of the Armory, for the option that the state then had was expiring shortly. He recalls definite statements that this would be the only appropriation for military purposes during that session of the legislature. He also states in his affidavit that the matter of improvements was discussed and that assurances were given to Colonel Kraft that the improvements would be provided for at a later date, and that in all respects it would be made into an Armory reasonably well equipped and habitable. Affiant further stated that he was acquainted with the Armory and that the same was badly in need of repairs and did not have facilities for the proper housing and maintaining of the supplies and men of the regiment. The terms of the affidavit are in general language. It is, however, definite that assurances were given to the claimant that improvements would be provided for at a later date, but it does not state what improvements and we gather from the affidavit that the claimant well knew that the appropriation did not include anything for improvements.

It also appears from the evidence that the claimant well knew the manner in which the improvements for the Armory should be made and that neither the then Governor nor Colonel Inglesh had the power to make appropriations. During claimant's long term of military service, his familiarity with military manuals and his constant contact with high officials of the Illinois National Guard and National Army officers, he must have known that the law provided a way to make the necessary improvements and that neither he, himself, or any other-officer of the National Guard could make such improvements upon their own volition without first getting the necessary appropriation, unless he wanted to take a chance with a legislature, many of its members probably not then even elected.

It appears from the amended petition that during the years 1923, 1924, 1925, 1926, 1927 and 1928, claimant expended for lumber, office supplies, athletic supplies, pianos, electrical supplies and garage equipment, etc., the sum of Ten Thousand Nine Hundred Sixty-one Dollars and Forty-nine Cents ($10,961.49).

The Attorney General, Otto Kerner, on March 7, 1934, filed a motion to dismiss for the following reasons:

1. That both the original and amended complaint filed herein are substantially insufficient in law and fail to state a proper legal cause of action against the respondent.

2. That since the original claim was filed herein on September 12, 1930, this court is without jurisdiction to consider expenditure items listed for the years 1923, 1924 and 1925, for the reason same are outlawed by Section 10 of the Court of Claims Act of 1917, as amended, and said Statute of Limitation has run against this portion of the claim.

3. That it affirmatively appears from the record the claimant has not legal right, title or interest in said Special Fund of the 202nd Coast Artillery Regiment of the Illinois National Guard, but acted only as a disbursing agent for the Chicago National Guard Commission which collected funds by subscription and donation and apportioned same among the various National Guard units in the City of Chicago for the sole benefit and use of the personnel of the National Guard.

4. That it affirmatively appears from the record claimant improperly commingled funds derived from rental of the Broadway Armory with funds secured from the National Guard Commission contrary to the provisions of Section 3½ of Article XVIII of the Military and Naval Code of Illinois, and that he made expenditures of funds derived from armory rentals without requisition and approval by the Adjutant General.

5. That under the facts shown by the record no legal claim can arise for refund to the claimant of those sums of money which he personally received as custodian of the Broadway Armory and voluntarily deposited in the Special Fund account for the reason claimant was under no duty or obligation to make such deposit and these funds, therefore, must necessarily be considered merely a gift made by claimant for the welfare and benefit of his organization or regiment. Nothing appears in the record and no proof has been offered which tends to show an agreement actual or implied by which the respondent became liable to make refund of this money to the claimant.

6. That except as to money actually derived from armory rental the respondent had no right, title or interest

in and to the Special Fund of the 202nd Coast Artillery Regiment and at no time exercised any supervision or control of the expenditure of said fund.

In claimant's brief it is argued that Colonel Kraft was in command of the 202nd Coast Artillery of the Illinois National Guard, during the years 1923 to 1928, inclusive, and during a large part of this time, he was also custodian of the Broadway Armory located at the corner of Thorndale and Broadway, Chicago, Illinois. The quarters of the 202nd Coast Artillery were in this building; that as Colonel of this regiment, the claimant was personally responsible for the equipment; that he had made various attempts to get the State to furnish a great amount of things as time went along, but the delays made it absolutely impossible to function unless he "took the bull by the horns" and did some of the things himself, and his actions were not only looked upon with satisfaction by the various parties having charge of the affairs, but were in general approved, for certain it was, that all of the things furnished were needed and were kept upon the premises, and still remain there, and are now in use by the State, and that all but a small part of the items listed in the Bill of Particulars were for improvements permanent in nature.

It is argued in the brief that sub-paragraph 4 of Section 6 of the Court of Claims Act gives the court jurisdiction to hear and determine all claims and demands, legal and equitable, liquidated and unliquidated, ex contractu and ex delicto, which the State, as a sovereign commonwealth, should, in equity and good conscience, discharge and pay.

The case of *Highway Commissioners* vs. *City of Bloomington,* 253 Ill. 164 is also quoted, along with *Harty Bros.* vs. *Polakow,* 237 Ill. 559, and a quotation from page 565 is set forth in the brief.

There is a vast difference between the authorities cited and the facts in the instant case, and we hold these authorities are not in point. It will be remembered that all of the expenditures claimed by the claimant were made deliberately by him with full knowledge of the possibilities of reimbursement, and at a time when there was no possible public danger, and we are impressed by the fact that no officers of the Illinois National Guard, including the Adjutant General, or

his assistants have appeared in behalf of the claimant; not his successors nor any of the captains, lieutenants or enlisted men that served in the 202nd Coast Artillery at the Armory in question during claimant's colonelcy, many of whom undoubtedly formed a friendship and affection with the claimant in the face of great mutual danger and years of acquaintanceship.

The statute referring to the Court of Claims is perhaps misleading or unfortunately worded. This court has in the case of *Crabtree* vs. *State of Illinois*, 7 Illinois Court of Claims, page 207 held that the language referred to defines the jurisdiction of the court, and that it does not create a new liability against the State nor increase or enlarge any existing liability and limits jurisdiction of court to claims under which State would be liable in law or equity, if it were suable, and where claimant fails to bring himself within the provisions of a law giving him the right to an award, he cannot invoke the principles of equity and good conscience to secure one.

Without extending this opinion to an undue length, we hold that because funds were not provided in a manner pointed out by Statute and the Constitution for the purpose for which Colonel Kraft spent the funds, we are without jurisdiction to grant him relief. To hold otherwise would be to nullify the Statute setting up all of the rules and regulations of the military manuals of this State insofar as these or similar questions are involved, and to render void the practices of the Adjutant General's Department, which are the result of many years of experience, and these things we refuse to do.

### Opinion on Petition for Rehearing.

*Per Curiam:*

Claimant Charles J. Kraft, through his counsel, having filed a petition for re-hearing in the above entitled cause and ten different grounds for re-hearing having been set forth and counsel having asked for re-hearing for the purpose of putting in new testimony, and it being admitted that claimant did not follow the statutes and regulations provided for such work, the petition for re-hearing must be denied.

It has never been the policy of this court to grant re-

hearings for the purpose of introducing new testimony and we hold that request for appropriations for such purposes as claimant requests in this case must be first submitted to the legislature, and if, in their discretion, they are inclined to make the appropriation, then such appropriation will come squarely within the constitution.

The Act creating the Court of Claims was designed to lessen the work of the State Legislature and not in any way to take away or lessen their powers, neither can we put our approval upon matters done contrary to law, and when an officer of the State or the State Militia presumes upon the authority granted the legislature, we must leave him where he has placed himself.

The petition for a re-hearing will, therefore, be denied.